**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
(856) 795-9002

**Attorney for Plaintiff**
**(Additional Counsel on Signature Page)**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN STANSBURY and MARK MANISCALCO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BROTHER INTERNATIONAL CORPORATION (USA),<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Kevin Stansbury and Mark Maniscalco, individually and on behalf of the Class defined below, bring this action for damages and equitable relief against Defendant, Brother International Corporation USA ("Brother"), demanding a trial by jury, and complain and allege as follows:

### INTRODUCTION

1. Brother is the entity that distributes for sale in the United States Brother's inkjet Multi-Function Center line of all-in-one devices, which are designed for printing, sending and receiving faxes, scanning, and copying for personal use or for use in small businesses or home offices (collectively, "MFC machines").

1

2. Brother also manufactures and sells replacement ink cartridges used by the MFC machines, and derives a substantial percentage of its profits from the sale of replacement ink cartridges. Inkjet cartridges manufactured by third parties ("non-OEM cartridges") are often substantially less expensive than those manufactured and sold by Brother, even though the non-OEM cartridges perform just as well as Brother inkjet cartridges. Nonetheless, Brother ensures an artificially high demand for its inkjet cartridges in a number of ways that harm consumers.

3. First, Brother unlawfully conditions its warranty coverage for the MFC machines on the purchase and exclusive use of Brother inkjet cartridges. That is, Brother warns consumers that if they do not purchase replacement cartridges from Brother, the warranty on their MFC machines will be void.

4. Second, Brother discourages the use of non-OEM cartridges by telling consumers that they are inferior to those that Brother sells, and that using non-OEM cartridges will damage their MFC machines. Plaintiffs are informed and believe that neither of these assertions is true.

5. Third, the MFC machines are designed so that consumers must replace inkjet cartridges prematurely. Brother claims that its use of four separate inkjet cartridges in MFC machines is more economical than machines that use a single color cartridge, because the separate-cartridge design purportedly enables consumers to replace only the cartridges that they actually use. In reality, however, the MFC machines consume color ink even when they are used exclusively for black-and-white printing; they routinely "self clean," which causes the ink to be depleted from all four cartridges even when they are not used at all. In addition, MFC machines give false "empty" messages that indicate that the inkjet cartridges are empty when they still contain a substantial amount of ink.

6. Brother does not disclose any of this information to consumers.

2

7. Brother also fails to inform consumers that MFC machines suffer from a defect that causes the machines' print heads to fail permanently, and that the cost of repair can exceed $150.00, which is as much as the MFC machine itself.

8. Rather than disclosing the existence of this defect to consumers, Brother has secretly extended the warranty on some MFC machines, but only for those consumers who learn about the secret warranty on their own, and only if those consumers demand warranty coverage and can also demonstrate they did not use non-OEM cartridges.

9. The conduct described above constitutes violations of the New Jersey Consumer Fraud Act, and has led to Brother's unjust enrichment. Accordingly, Plaintiffs have brought this action on behalf of themselves and other purchasers of MFC machines for the purpose of obtaining declaratory relief, for an order enjoining Brother from continuing to engage in the unlawful, deceptive and unconscionable conduct described above, and for an order awarding them restitution and damages.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over the claims asserted herein on behalf of a statewide class pursuant to 28 U.S.C. section 1332, as amended in February 2005 by the Class Action Fairness Act. Jurisdiction is proper because (a) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; (b) there is complete diversity of citizenship between Plaintiffs and Brother; and (c) Brother has purposefully availed itself of the privilege of conducting business activities within the State of New Jersey, where it maintains its principal place of business and from which it distributes and sells the products at issue in this lawsuit to Plaintiffs and to the members of the proposed class.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this district.

3

## PARTIES

12. Plaintiff, Kevin Stansbury, is a resident of Madera, California, who purchased a Brother MFC 5840cn all-in-one device for his own use (and not for resale).

13. Plaintiff, Mark Maniscalco, is a resident of Long Beach, California, who purchased a Brother MFC 3220c all-in-one device for his own use (and not for resale).

14. Defendant, Brother International Corporation (USA), is a corporation that was created under the laws of the state of Delaware, and maintains its principal place of business in Bridgewater, New Jersey.

## GENERAL ALLEGATIONS

15. A substantial portion of Brother's business in the United States focuses on providing printers, fax machines, scanners, and copy machines for personal, small business, or home office use. The MFC machines combine these functions in a single device. Plaintiffs are informed and believe that Brother has sold tens of millions of MFC machines in the United States alone.

16. MFC machines are designed to allow consumers to print or copy documents and receive faxes in color and in black and white via the use of four separate inkjet cartridges (one that contains black ink and three that contain colored ink – cyan (blue), magenta (red), and yellow).

17. Each of the four inkjet-cartridge slots must be filled with the correct color ink in order for the MFC machines to print and produce copies. That is, the black ink slot must contain a black inkjet cartridge, and the colored ink slots must contain color inkjet cartridges.

18. In its marketing materials, Brother touts this system as a "cost-saving 4-cartridge system" that allows the user to "only replace the color that's empty!" Brother also claims the 4-cartridge system results in "low running costs." The clear implication of this "feature" is that

4

consumers will save money by not having to replace ink that they do not use. As discussed in more detail below, that is not true.

19. A very large portion of the profits Brother earns comes from ink cartridges. Plaintiffs are informed and believe that, like other products that require the replacement of consumables, the MFC machines are priced low because the profit margin on the ink cartridges in these machines is high. As the *Nikkei Weekly* (Japan) put it, "Brother earns most of its profits not from the printers but from ink, toner and other consumables."

20. Plaintiffs are informed and believe that, notwithstanding Brother's emphasis on the MFC's "low running costs," MFC machines are designed to be "ink hogs"; that is, they are designed to prematurely consume ink in large quantities, requiring users to buy more ink cartridges from Brother. More specifically, Plaintiffs are informed and believed that MFC machines suffer from at least three design characteristics that are intended to result in increased ink consumption: (1) an automatic "self-cleaning" feature, which occurs daily and each time the machine is turned on, that drains the ink from the four ink cartridges, (2) a default setting that causes MFC machines to draw ink from the colored inkjet cartridges, even when the consumer prints, faxes, or copies exclusively in black and white, and (3) a computer chip that sends a message to the machines' LCD read-out, advising consumers that one or more inkjet cartridges are empty and must be replaced, even though they are not empty.

21. Plaintiffs are informed and believe that, because of these design characteristics, consumers who purchase MFC machines are forced to purchase replacement ink needlessly, and much sooner than they would otherwise.

22. Plaintiffs are also informed and believe that the inkjet cartridges Brother sells for use in its MFC machines range in price from approximately $14.99 to $34.99 each.

5

23. Brother compounds the problem of having to replace inkjet cartridges prematurely by using strong-arm tactics to force consumers to buy Brother ink cartridges (as opposed to buying less expensive cartridges made by another manufacturer). Brother does so by conditioning MFC warranty coverage on the use of ink cartridges made by or approved by Brother. Specifically, the MFC warranty states that it "is VOID – that is the product has no warranty if -- . . . non-Brother® brand or non-Brother® approved parts, supplies, power supplies or other accessories have been used with the product." Plaintiffs are informed and believe that Brother has not approved the use of non-OEM cartridges. To further discourage consumers from purchasing non-OEM cartridges, Brother advises consumers that the use of non-Brother ink cartridges can damage the machine and that any such damage would not be covered by warranty.

24. Plaintiffs are informed and believe that, in reality, such damage does not occur, and that the warnings that Brother gives in this regard are willfully deceptive, in that they are intended to discourage the purchase and use of less expensive non-OEM inkjet cartridges so that class members will purchase and use the more costly inkjet cartridges sold by Brother. The warnings are also unlawful in that they violate federal law. *See* 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c).

## THE METHODS BY WHICH MFC MACHINES USE, OR PURPORT TO USE, INK TOO QUICKLY

### I. THE SELF-CLEANING "FEATURE"

25. As alleged above, MFC machines include a "self-cleaning" feature that causes the ink to be depleted in cartridges even if they are not used at all. Plaintiffs are informed and believe that this occurs because the self-cleaning technology Brother employs in the MFC machines, is designed to purposefully extract ink from each of the four cartridges on a regular

6

and frequent basis (*i.e.,* every day or every other day, and every time the machine's power is turned on).

26. Because the inkjet cartridges are depleted in this manner, consumers are forced to replace inkjet cartridges prematurely — in many cases, before they have ever been used. For example, a consumer who prints primarily or exclusively in black ink will have to pay to replace the black ink cartridge and each of the three colored ink cartridges, *even if he or she has never printed in color*, because the self-cleaning feature will drain all of the ink from the colored-ink cartridges even if they are not used for printing. The same consumer will also have to pay to replace the black-ink cartridge more frequently, because the self-cleaning feature will drain the color from that cartridge prematurely.

27. Moreover, due to the way the MFC machines are designed to operate, a consumer cannot avoid replacing cartridges he or she may never use because the MFC machines will not function if one or more of the four ink cartridges is empty, or if a consumer who only wishes to print in black tries to insert black inkjet cartridges into the colored ink slots.

28. The self-cleaning feature causes consumers to spend money to pay to replace cartridges much more frequently than they otherwise would, thereby increasing the cost of owning and operating the MFC machine. Nonetheless, Brother does not disclose this information or the additional cost created by this "feature" to prospective purchasers before they buy an MFC machine.

## II. THE COLOR DEFAULT SETTING

29. The self-cleaning "feature" exacerbates another undisclosed design characteristic that causes MFC machines to deplete the ink from cartridges that are not used. The automatic default setting for the MFC machines is color. This means the MFC machine automatically mixes all the colors in the four cartridges to produce a selected color, even black. Consequently,

7

even if a consumer prints and copies only in black ink, the MFC machines draw on — and, therefore, deplete — the color cartridges as well.

### III. FALSE INK-LEVEL READINGS

30. Brother MFC machines also contain a small computer chip in the inkjet cartridges. This chip enables the inkjet cartridge and the MFC machine to communicate, and also enables the machine to inform the user of the level of ink in the cartridge. The chip is supposed to keep track of ink usage by counting and recording each droplet of ink that the machine uses. In actuality, the chip causes the MFC machines to inform the user (via the machines' LCD display) that the inkjet cartridge is empty when it is not empty and the machine ceases to function until a replacement cartridge is installed. As a result, class members are falsely informed that they must purchase new inkjet cartridges. They actually would be able to print a substantial number of additional print jobs, but for the chips preventing the machines from functioning until a replacement cartridge is installed.

### "MACHINE ERROR 41"

31. In addition to the false "empty" messages, ink-depletion problems, and voiding its warranty if consumers use aftermarket inkjet cartridges in their MFC machines, the MFC machines possess an additional, undisclosed defect that has harmed the Class. The MFC machines (as well as some fax machines that are not the subject of this lawsuit) have a flaw that causes them to shut down after producing a message called "Machine Error 41." Brother acknowledged the problem in its 2005 Social & Environmental Report, in which it states that 15 models of MFC machines and facsimile machines are affected by a "quality issue," which Brother describes as "print head trouble" that causes "the 'Machine Error 41' message [to occur], and printing stops." Brother claims that it has notified owners of this problem by posting information on its website, and has been "promptly offering repairs for any relevant products."

32. Contrary to Brother's assertion that users have been notified of the Machine Error 41 defect on its website, Plaintiffs are informed and believe that Brother has made no efforts to notify consumers of the existence of that defect — including any mention on its website. The only reference to Machine Error 41 Plaintiffs could find on Brother's website is to the single paragraph from the 2005 Social & Environmental Report mentioned above; no other reference could be found.

33. Plaintiffs are also informed and believe that, contrary to Brother's assertion that it "promptly" offers consumers repairs when their MFC machines cease functioning because of the Machine Error 41 defect, Brother actually blames the consumer, claiming that it was their use of non-OEM ink that caused the problem. And although Brother has purportedly extended its warranty for certain MFC machines that encounter the Machine Error 41 defect, Plaintiffs are informed and believe that Brother has made no effort to inform consumers of the existence of such coverage, and that all but the most persistent consumers are refused service despite the existence of extended-warranty coverage. As a result, substantial numbers of consumers have been left to pay approximately $150 or more to repair their MFC machines, and those who have yet to experience the problem are unaware of any extended warranty or any other available remedy.

**PLAINTIFF STANSBURY'S EXPERIENCE**

34. Plaintiff Stansbury purchased his MFC machine (model MFC-5840cn) in mid-2005. At the time he purchased the machine, Plaintiff Stansbury believed the separate inkjet cartridges would save money on replacements, primarily because he rarely used color ink and, therefore, would only have to replace the black ink cartridge. Despite the fact that he used the machine almost exclusively for black-and-white printing and copying, his MFC machine's color cartridges were becoming depleted. As a result, Plaintiff Stansbury has purchased several

9

replacement Brother color inkjet cartridges for his MFC machine, despite the fact that he had not used the machine to print or copy in color.

35. Plaintiff Stansbury's MFC machine's LCD screen also would indicate that a cartridge needed replacement when it appeared to still have ink in it. Believing the "empty" warning to be accurate, Plaintiff Stansbury stopped using the cartridges in question when this occurred and purchased new Brother inkjet cartridges as replacements. Contrary to the "empty" warning on the MFC machine's LCD display, Plaintiff Stansbury ultimately learned, after purchasing a new Brother inkjet cartridges, that the cartridges in question were likely capable of several more print or copy jobs. Because the machine will not print if any of the cartridges registers "empty" (regardless of whether it actually is empty), however, the machine would not print at all until Plaintiff Stansbury replaced the purportedly "empty" cartridges.

36. More specifically, Plaintiff Stansbury discovered that if even one cartridge was empty (either actually or because the MFC machine's computer chip falsely indicated that it was), his MFC machine's printing, copying, and fax functions became inoperable.

37. Because of the depletion of ink from cartridges he did not use, and because of the inaccurate and misleading messages displayed by his Brother MFC machine, Plaintiff Stansbury did not receive the full value of his MFC machine or the new inkjet cartridges he had to purchase. These additional purchases contradict the representations Brother made in its marketing materials about the "savings" consumers would experience due to the MFC machines' use of four separate inkjet cartridges. Consequently, Plaintiff Stansbury has suffered an ascertainable loss and actual injury.

### PLAINTIFF MANISCALCO'S EXPERIENCE

38. Plaintiff Maniscalco purchased his MFC machine in late 2005, believing that the machine would be economical to purchase and maintain. Since then, the MFC machine has

10

repeatedly displayed false "empty" messages when the ink cartridges actually have ink left in them. Moreover, Plaintiff Maniscalco's MFC machine has gone into "self-cleaning" mode each and every night since he purchased it, causing substantial amounts of ink to be depleted from the inkjet cartridges — including the color cartridges, despite the fact that Plaintiff Maniscalco very seldom prints or copies in color. Indeed, Plaintiff Maniscalco is informed and believes that the majority of the ink that his MFC machine uses is depleted during the self-cleaning process.

39. Because the MFC machine cannot operate when an inkjet cartridge requires replacement (actually or because it displays a false "empty" message), Plaintiff Maniscalco has been forced to purchase new inkjet cartridges. Consequently, Plaintiff Maniscalco has suffered an ascertainable loss and actual injury.

## CLASS ALLEGATIONS

40. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of themselves and all others similarly situated. The Class that Plaintiffs seek to represent in this action is as follows: All consumers who purchased Brother MFC machines for use, and not resale, in the United States from six years prior to the filing of this lawsuit (*i.e.,* October 2000) to the present. Excluded from the Class are the following:

    a.    Brother, its subsidiaries and affiliates, officers, directors, and employees;

    b.    persons who have settled with and validly released Brother from separate, non-class legal actions based on the conduct alleged herein;

    c.    the presiding judge in this matter; and

    d.    jurors who are called upon to hear this matter.

41. Plaintiffs are informed and believe that there are millions current and former owners of MFC machines throughout the United States. The Class is, therefore, so numerous and geographically dispersed that joinder of all members in one action is impracticable.

42. Brother has acted with respect to Plaintiffs and members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all class members. The questions of law and fact common to the class predominate over the questions that may affect individual class members, including the following:

    a. whether the Brother inkjet cartridges used in MFC machines contain a computer chip that causes the machine to produce a warning message that falsely indicates that the cartridge is empty when it is not;

    b. whether the technology Brother uses in its MFC machines causes them to deplete the ink in inkjet cartridges, even when those cartridges are not used;

    c. whether Brother concealed or failed to adequately disclose to prospective purchasers of MFC machines that the chips used in those machines cause them to indicate that inkjet cartridges are empty when they are not;

    d. whether Brother concealed or failed to adequately disclose to prospective purchasers of MFC machines that the self-cleaning "feature" in those machines will deplete ink in all of the cartridges and force early replacement of ink cartridges;

    e. whether Brother's conduct constitutes violations of N.J.S.A. § 56:8-2;

    f. whether Brother's conduct constitutes fraudulent concealment;

    g. whether Brother's conduct led to its unjust enrichment;

    h. the amount of monetary recovery Plaintiffs and members of the proposed class are entitled to receive, including compensatory and statutory damages, punitive damages, and restitution.

43. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and do not have interests that are antagonistic to or in conflict with those they seek to represent.

44. Plaintiffs have retained counsel who have considerable experience in the prosecution of class actions and other forms of complex litigation.

45. In view of the complexity of the issues and the expense that an individual plaintiff would incur if he or she attempted to obtain relief from a large, transnational corporation such as Brother, the separate claims of individual class members are monetarily insufficient to support separate actions. Because of the size of the individual Class members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of in this Complaint.

46. The Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent a class action, Class Members will continue to suffer losses, Brother's violations of law will be allowed to proceed without a full, fair, judicially supervised remedy, and Brother will retain sums received as a result of its wrongdoing. A class action therefore provides a fair and efficient method for adjudicating this controversy.

47. The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications with respect to thousands of individual class members, which would, as a practical matter, dispose of the interests of the class members not parties to those separate actions or would substantially impair or impede their ability to protect their interests and enforce their rights.

## FIRST CLAIM FOR RELIEF
(Declaratory Relief)

48. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. Pursuant to Federal Rule of Civil Procedure 57, Plaintiffs seek a declaration of the parties' rights and duties.

50. Among the unfair, fraudulent, and unlawful conduct Plaintiffs have alleged in this Complaint is Brother's decision to void its warranty coverage of MFC machines in the event that non-OEM inkjet cartridges are used in them, despite the prohibition against such conditional warranty coverage by federal law. 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c).

51. Plaintiffs allege that this condition constitutes an unconscionable commercial practice in violation of N.J.S.A. § 56:8-2 that should be enjoined by this Court. Brother disputes this allegation. Therefore, an actual controversy has arisen and now exists between Brother and Plaintiffs and the class they propose to represent in this action. Accordingly, Plaintiffs hereby request a judicial declaration of the rights and duties of the parties with respect to each of the foregoing issues in controversy.

## SECOND CLAIM FOR RELIEF
(Violations of N.J.S.A. § 56:8-2)

52. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

53. Brother is engaged in trade and commerce, and maintains its principal place of business, in the State of New Jersey.

54. As discussed in paragraphs 1 through 3 and 8 through 33 of this Complaint, Brother has violated N.J.S.A. § 56:8-2 by engaging in unfair, fraudulent, and unconscionable conduct, including the following:

a. by manufacturing MFC machines that falsely indicate that the inkjet cartridges are empty when they are not;

b. by failing to advise prospective purchasers of MFC machines that their self-cleaning feature depletes ink from inkjet cartridges even when those cartridges are not used;

c. by failing to disclose to prospective purchasers of MFC machines that they use color ink even when printing exclusively in black-and-white;

d. by voiding warranty coverage in the event that owners of MFC machines use non-OEM inkjet cartridges;

e. by advising consumers that their warranties will be void if they use replacement ink cartridges other than those manufactured or sold by Brother, despite the legal prohibitions against such an unconscionable condition; and

f. by failing to notify prospective purchasers and owners of MFC machines that the print heads may fail prematurely as a result of the Machine Error 41 defect.

55. As a proximate result of Brother's conduct, as alleged above, Plaintiffs and the Class they propose to represent have suffered an ascertainable loss and actual injury for which they are entitled to legal and equitable relief, including treble damages and an injunction prohibiting Brother from enforcing the provision of its warranty that states that its warranty is void if consumers purchase and use non-OEM inkjet cartridges in their MFC machines.

## THIRD CLAIM FOR RELIEF
(Unjust Enrichment)

56. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

57. As alleged in paragraphs 8 through 33, above, Plaintiffs and the Class they propose to represent have needlessly purchased replacement inkjet cartridges from Brother as a result of (a) warnings produced by MFC machines that inkjet cartridges were empty when they were not; (b) the MFC machines' depletion of ink from inkjet cartridges even when they are not used; and (c) Brother's threat to void its warranty coverage in the event that non-OEM inkjet cartridges are used in an MFC machine. Brother has thereby unfairly and deceptively increased its sales of inkjet cartridges by forcing consumers to purchase Brother inkjet cartridges, which are usually significantly more expensive than non-OEM cartridges.

58. In addition, Brother has known that a defect is causing "Machine Error 41," which means that the print heads have failed and the MFC machines cannot be used without purchasing new print heads (which Plaintiffs are informed and believe cost approximately $150 to install — nearly the cost of these machine itself). Although Brother has admitted that MFC machines built from 2001 through 2004 are affected by this defect, and has stated that it would notify consumers about Brother's purported willingness to rectify the problem, Brother has actually kept this information to itself and has blamed consumers for causing the print heads on these machines to fail. Consequently, Plaintiffs and the proposed Class have conferred a benefit on Brother, which Brother knew to be inequitable under the circumstances, but accepted and retained those benefits nonetheless.

59. As a proximate result of Brother's conduct, Brother obtained secret profits by which it became unjustly enriched at the expense of Plaintiffs and Class members. It would be

16

unfair for Brother to retain the profits it has unjustly received at the expense of the Plaintiff and the proposed Class.

60. Accordingly, Plaintiffs and the Class seek an order establishing Brother as a constructive trustee of the profits that served to unjustly enrich Brother, together with interest during the period in which Brother has retained such funds, and requiring Brother to disgorge those funds to Plaintiffs and members of the proposed Class in a manner to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in this Complaint as follows:

1. for an order certifying that the action may be maintained as a class action, on behalf of the proposed Class and any subclass(es) the Court may deem appropriate;

2. for a judicial declaration that Brother's decision to void its warranty coverage of MFC machines in the event that non-OEM inkjet cartridges are used in them, despite the prohibition against such conditional warranty coverage by federal law, constitutes an unconscionable commercial practice that violates N.J.S.A. § 56:8-2;

3. for an injunction prohibiting Brother from enforcing the provision of its warranty that states that its warranty is void if consumers purchase and use non-OEM inkjet cartridges for their MFC machines;

4. for an order awarding treble damages for Brother's violations of N.J.S.A. § 56:8-2;

5. for an order requiring Brother to pay full restitution of all monies by which it was unjustly enriched as a result of the conduct alleged in this Complaint;

6. for an award of attorney fees;

7.     for an award of costs;

8.     for an award of pre- and post-judgment interest on all amounts awarded; and

9.     for any and all other relief that the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class demand a jury trial in this action for all the claims so triable.

Dated: October 13, 2006             Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:     /s Lisa J. Rodriguez
    Lisa J. Rodriguez
    8 Kings Highway West
    Haddonfield, NJ 08033
    (856) 795-9002

    Jeffrey L. Fazio (jlf@fazmiclaw.com)
    Dina E. Micheletti (dem@fazmiclaw.com)
    FAZIO | MICHELETTI LLP
    4900 Hopyard Road, Suite 290
    Pleasanton, CA 94588
    Telephone: 925-469-2424
    Telecopier: 925-369-0344

    Lisa M. Mezzetti (lmezzetti@cmht.com)
    Douglas J. McNamara (dmcnamara@cmht.com)
    COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.
    West Tower, Suite 500
    1100 New York Avenue, N.W.
    Washington, D.C. 20005
    Telephone: 202-408-4600
    Telecopier: 202-408-4699

Melissa M. Harnett (mharnett@wcclaw.com)
David Casselman (dcasselman@wcclaw.com)
WASSERMAN COMDEN & CASSELMAN, L.L.P.
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: 818-705-6800
Telecopier: 818-345-0162
Counsel for Plaintiffs
Kevin Stansbury and Mark Maniscalco,
on behalf of themselves and all others
similarly situated

Case 3:06-cv-03407-FLW-TJB Document 39-1 Filed 10/13/06 Page 19 of 20 PageID: 20

Melissa M. Harnett (mharnett@wcclaw.com)
David Casselman (dcasselman@wcclaw.com)
WASSERMAN COMDEN & CASSELMAN, L.L.P.
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: 818-705-6800
Telecopier: 818-345-0162
**Counsel for Plaintiffs
Kevin Stansbury and Mark Maniscalco,
on behalf of themselves and all others
similarly situated**