**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                            :
MANISCALCO et al.,                          :
                                            :      Civil Action No.: 06-CV-4907(FLW)
                Plaintiffs,                  :
                                            :           **Opinion**
        v.                                  :
                                            :
BROTHER INTERNATIONAL                       :
CORPORATION (USA),                          :
                                            :
                Defendant.                  :
_____     :


**WOLFSON**, **United States District Judge**:

        Plaintiffs, individually, and on behalf of a proposed class of consumers, bring various

claims relating to Plaintiffs' purchases of Defendant Brother International Corporation's ("BIC")

Multi-Function Center line of all-in-one devices ("MFC machines").[1] Presently before the Court

is BIC's motion to dismiss Plaintiffs' claim for a declaratory judgment under the Magnuson-

Moss Warranty Act ("MMWA"), 15 U.S.C. § 2302(c), and New Jersey Consumer Fraud Act

("CFA"), N.J.S.A. § 56:8-2; and, in part, Plaintiffs' claim for damages and equitable relief under

the CFA; and Plaintiffs' claim of unjust enrichment.

        For the following reasons, Plaintiffs' "first claim" for a declaratory judgment is dismissed

without prejudice. With respect to Plaintiffs' "second claim" under the CFA, insofar as such

_____

        [1]Plaintiff Mark Maniscalco purchased an MFC machine in late 2005. Id. at ¶37.  Plaintiff
Josh Fisher acquired a 5100c MFC machine upon the death of his mother who originally
purchased the MFC in November of 2002. Id. at ¶41. Plaintiff Walter Huryk purchased his 3220c
MFC machine in December of 2003. Id. at ¶44. Plaintiff Frank Martorana purchased a 5840cn
MFC machine on August 3, 2004. Id. at ¶46. Plaintiff Thomas Rafferty purchased a 5200 MFC
machine in 2001 and a 5100c MFC machine in 2003. Id. at ¶48.

claim is predicated on BIC's conditional warranty, Plaintiffs' claim for injunctive relief is dismissed without prejudice and the damages claims of Plaintiffs Maniscalco, Fisher, Huryk and Martorana are dismissed without prejudice. BIC's motion to dismiss plaintiff Rafferty's CFA damages claim is denied. With respect to Plaintiffs' "second claim" under the CFA, insofar as such claim is predicated on the "Machine Error 41" defect, all of Plaintiffs' claims are dismissed without prejudice. With respect to Plaintiffs "third claim" for unjust enrichment, insofar as such claim is based on the BIC's conditional warranty, the claims of plaintiffs Maniscalco, Fisher, Huryk and Martorana are dismissed without prejudice. BIC's motion to dismiss plaintiff Rafferty's unjust enrichment claim, insofar as such claim is based on the conditional warranty, is denied. Also with respect to Plaintiffs' "third claim" for unjust enrichment, insofar as such claim is predicated on the "Machine Error 41" defect, Plaintiffs' claims are dismissed without prejudice. Finally, BIC's motion to dismiss plaintiff Fisher's CFA and unjust enrichment claims for lack of standing, insofar as they are predicated on the ink-wasting design features of his MFC machine, is denied. Since all of the claims are dismissed without prejudice, Plaintiffs may move to amend the Second Amended Complaint ("SAC"), and in opposition to such amendment, BIC may raise all arguments not considered in this Opinion.

**I. Factual Background**

Since Defendant moves to dismiss Plaintiffs' claims, in part, for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the following account of the facts assumes all of Plaintiffs' allegations to be true. BIC distributes MFC machines, which function as printers, fax machines, scanners, and copiers, SAC, ¶1; BIC also manufactures and sells replacement ink cartridges for MFC machines, and derives a

substantial portion of its profits from the sale of those cartridges. Id. at ¶2. Inkjet cartridges

manufactured by third parties ("non-OEM cartridges") are often substantially less expensive than

BIC's, even though non-OEM cartridges perform just as well as those made by BIC. Id.

MFC machines require one black and three color ink cartridges. Id. at ¶19. Each of a

MFC machine's four inkjet cartridge slots must be filled with the correct color ink for the MFC

machine to print and produce copies. Id. at ¶20. In its marketing materials, BIC touts this system

as a "cost saving . . . system." Id. at ¶21. Plaintiffs contend, to the contrary, that "Brother ensures

an artificially high demand for its inkjet cartridges in a number of ways that harm consumers." Id.

at ¶2. First, BIC conditions its warranty coverage of "the MFC machines" on the exclusive use of

BIC inkjet cartridges. Id. at ¶3. "[T]hat is, [BIC] warns consumers that if they do not purchase

replacement cartridges from [BIC], the warranty on their MFC machines will be void." Id.

Second, BIC discourages the use of non-OEM cartridges by misrepresenting that they are inferior

to BIC's cartridges and that they will damage MFC machines. Id. at ¶4. Third, the MFC

machines are designed so that inkjet cartridges must be replaced prematurely. Id. at ¶5.

Additionally, Plaintiffs contend that BIC "fails to inform consumers that MFC machines

suffer from a defect that causes the machines' print heads to fail prematurely, and that the cost of

repair can exceed $150.00, which is as much as the MFC machine itself." Id. at ¶7. Further,

"[r]ather than disclosing the existence of this defect to consumers, [BIC] has secretly extended

the warranty on some MFC machines, but only for those customers who learn about the secret

warranty on their own, and only if those consumers demand warranty coverage and can also

demonstrate they did not use non-OEM cartridges." Id. at ¶8.

BIC's motion to dismiss concerns, primarily, the claims related to the conditional

warranty and the undisclosed print head defect.

**A. The Warranty**

With respect to the conditional warranty, the SAC makes allegations in broad brush

fashion:

> [BIC] compounds the problem of having to replace inkjet cartridges prematurely
> by using strong-arm tactics to force consumers to buy [BIC] ink cartridges (as
> opposed to buying less expensive cartridges made by another manufacturer).
> [BIC] does so by conditioning MFC warranty coverage on the use of ink
> cartridges made by or approved by [BIC]. Specifically, the MFC warranty states
> that it "is VOID - that is the product has no warranty if – . . . non-Brother© brand
> or non-Brother© approved parts, supplies, power supplies or other accessories
> have been used with the product." Plaintiffs are informed and believe that [BIC]
> has not approved the use of non-OEM cartridges.

Id. at ¶26. Additionally, to "further discourage consumers from purchasing non-OEM cartridges,

[BIC] advises consumers that the use of non-Brother ink cartridges can damage the machine and

that any such damage would not be covered by warranty." Id. Plaintiffs allege that such damage

does not occur, and that such warnings are deceptive and, like the conditional warranty, designed

to discourage consumers from purchasing inkjet cartridges from competitors. Id. at ¶27.

The language of the unspecified "MFC warranty" referred to in the SAC was retrieved

from a BIC web link cited in the SAC. Id. at ¶26 n. 2.  The Certification of Douglas McNamara

("McNamara Certification"), attached to Plaintiffs' Opposition Brief, avers that the warranty

language quoted in the SAC was taken from the "User's Guide for Defendant's 5100c MFC

machine, and the Limited Warranty contained within that document." McNamara Certification,

¶4. The User's Guide and warranty was downloaded by Plaintiffs' counsel from "Defendant's

website" on August 21, 2007. Id.

The SAC's allegations regarding the MFC conditional warranty only concern plaintiffs

Rafferty and Fisher. Plaintiff Rafferty purchased only BIC brand ink cartridges during his MFC machine's warranty period "because the warranty stated that it would be voided had he used non-Brother ink. After the warranty lapsed, he started using non-Brother ink, which he bought online. The generic ink was approximately $3 per color cartridge (as compare[d] to around $12 for Brother brand), and $6 for the black cartridge (as compared to $25 for the Brother brand)." Id. at ¶49. It is alleged that plaintiff Fisher "purchased only Brother ink," but the SAC does not say that this had anything to do with the conditional warranty. Id. at ¶41. Because Fisher's MFC "passed" to him after his mother passed away, and the SAC does not say when that occurred, the SAC is unclear as to whether Fisher purchased any BIC inkjet cartridges during the warranty period of his MFC machine. Id.

Further, the SAC does not allege that the warranty language referenced in the SAC remained applicable to the MFC machines of any of the named plaintiffs at the time this lawsuit was filed in October 2006. With respect to plaintiffs Maniscalco, Huryk and Mortorana, the SAC is devoid of any allegation that the conditional warranty quoted in the SAC - and upon which Plaintiffs' claims regarding the warranty are based - was ever applicable to their MFC Machines. None of these plaintiffs are alleged to have purchased or used the 5100c model. See SAC, ¶¶37-40;44-45;46-47. As to plaintiff Fisher, the SAC fails to allege that the warranty language quoted in the SAC, and downloaded from a User's Guide in 2007, applied to the 5100c MFC machine that his mother purchased in November 2002.  Id. at ¶41. In any event, even if that language did apply, the conditional warranty referenced in the SAC lasted one year for the MFC machine itself, and 90 days for consumable products. McNamara Certification, Ex. C., iv.  Thus, even if the warranty language at issue applied to Fisher's MFC machine, the conditional warranty had

5

long expired by the time this lawsuit was filed. As to plaintiff Rafferty, even though the SAC does not allege that the conditional warranty quoted in the SAC applied to his MFC machine, the SAC does at least allege that a similar restriction applied. SAC, ¶49.  However, Rafferty purchased his 5100c MFC machine in 2003 (and another MFC machine in 2001). Id. at 48. Thus, the specific warranty referenced in the SAC had clearly expired by the time Rafferty filed suit in October 2006, and the SAC does not allege that Rafferty's warranty had not expired, if it was different from the one referenced in the SAC.

In sum, only plaintiff Rafferty is adequately alleged to have been affected in any way by the conditional warranty, and the SAC does not allege that Rafferty's warranty was still applicable at the time this lawsuit was initiated.

**B. The "Machine Error 41" Defect**

Plaintiffs allege that their MFC machines contained an "undisclosed defect . . . that causes them to shut down after producing a message called 'Machine Error 41.'" Id. at ¶34. The SAC is ambiguous as to when it is alleged that BIC knew of the "defect": "Brother acknowledged the problem in its 2005 Social & Environmental Report, in which it states that 15 models of MFC machines are affected by a 'quality issue,' which Brother describes as 'print head trouble' that causes 'the Machine Error 41 message [to occur], and printing stops.'" Id. at ¶34; McNamara Certification, Ex. A. In the Report, BIC claims to have notified owners of the problem by posting information on the BIC website and by "promptly" offering repairs. McNamara Certification, Ex. A. However, Plaintiffs claim that BIC "has made no efforts to notify consumers of the existence of that defect  - including any mention on its website" other than the 2005 Report. Id. at ¶35. Further, Plaintiffs allege that BIC has not "promptly" offered

6

repairs to consumers, but rather "blames the consumer, claiming that it was their use of non-OEM ink that caused the problem." Id. at ¶36. Finally, Plaintiffs allege that "[a]lthough [BIC] has purportedly extended its warranty for certain MFC machines that encounter the Machine Error 41 defect, Plaintiffs are informed and believe that [BIC] has made no effort to inform consumers of the existence of such coverage, and that all but the most persistent consumers are refused services despite the existence of extended-warranty coverage. As a result, substantial numbers of consumers have been left to pay approximately $150 or more to repair their MFC machines, and those who have yet to experience the problem are unaware of any extended warranty or any other available remedy." Id.

Plaintiffs Fisher, Huryk and Martorana experienced a "Machine Error 41" problem with their MFC machines in early to mid 2007. Id. at ¶¶42, 44, 46. Plaintiff Rafferty's MFC machine failed as a result of this problem in early 2006. Id. at ¶48. It is unclear from the SAC's allegations whether plaintiff Maniscalco experienced a "Machine Error 41" problem at all, or even whether his MFC machine stopped working as a result of the "machine error" he experienced. Id. at ¶38.

## II. Procedural History

Plaintiffs filed suit in October 2006, Docket Entry No. 1, and filed a Second Amended Complaint in October of 2007. Docket Entry No. 29.

## III. Standard Of Review

Since the Court finds the vague and conclusory nature of the SAC to be problematic for determining Plaintiffs' standing and claims, it is important to elaborate on the standard for reviewing the sufficiency of a complaint. "[T]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule

12(b)(6)." Petruska v. Gannon University, 462 F.3d 294, 299 n. 1. (3d Cir. 2006).

In Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), the Third Circuit elaborated the appropriate standard for evaluating a Rule 12(b)(6) or 12(b)(1) motion in light of the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). The Third Circuit made clear that an acceptable statement of the standard remains: "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (internal quotations and citation omitted). Though Twombly "emphasized throughout its opinion that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement," Id., the Third Circuit emphasized the importance of Twombly's attention to the concept of a "showing."

> Fed. R. Civ. P. 8(a)(2) requires a "showing" that the plaintiff is entitled to relief:
>
> The [Twombly] Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." [Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,]1965 n. 3 [(2007)]. Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. at 1966. The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n. 3.

Id. at 231-32. Because a "showing" rather than a bare assertion is required, Twombly instructs "that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Id. at 232 (citation omitted) (emphasis added). Further, "[w]e caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Id.

(citation omitted). However, the Third Circuit further cautioned that, in <u>Twombly</u>'s discussion, the concept of a "showing" "requires only notice of a claim and its grounds," as distinguished from "a pleader's bare averment that he wants relief and is entitled to it." <u>Id.</u> at 234 (internal quotations and citation omitted).

> The Third Circuit summarized:
>
> The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Id.</u> Although only notice of a claim and its grounds are required to survive a motion to dismiss, a complaint must have "enough factual matter (taken as true) to suggest" the elements of the claim.

## IV. Claims Involving The Warranty

### A. Declaratory Relief

Plaintiffs' "first claim" is that they are entitled to a declaratory judgment that BIC's conditional warranty, which is voided in the event that non-BIC inkjet cartridges are used, violates the MMWA and the CFA. Defendant argues that, on the allegations of the SAC, Plaintiffs lack standing to bring such a claim. The Court agrees.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" requirement refers to the case or controversy requirement of Article III. <u>Teva</u>

Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., 482 F.3d 1330, 1336 (3d Cir.

2007). In Teva Pharmaceuticals, the Third Circuit recently stated that standing in the declaratory

judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the
> parties having adverse legal interests"; and that it be "real and substantial" and
> "admi[t] of specific relief through a decree of a conclusive character, as
> distinguished from an opinion advising what the law would be upon a
> hypothetical state of facts."

Id. (citing MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 771). The court continued:

"Basically, the question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between the parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S. Ct. 764, 771 (2007)); see also

Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 193-94 (3d Cir. 2004). Specifically,

though in an unpublished opinion, the Third Circuit makes clear that "[i]n order to establish

standing and thereby satisfy the 'case or controversy' requirement of Article III, a party

requesting a declaratory judgment 'must allege facts from which it appears there is a substantial

likelihood that he will suffer injury in the future.'" Lattaker v. Rendell, Docket No. 07-4694,

2008 WL 723978, *2 (3d Cir. Mar. 18, 2008) (quoting Bauer v. Texas, 341 F.3d 352, 358 (5th

Cir. 2005)).

      The SAC fails to allege that any of the named plaintiffs has "a substantial likelihood that

he will suffer injury in the future," Lattaker, 2008 WL 723978 at *2, or that there is otherwise a

controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." Teva Pharmaceuticals, 482 F.3d at 1336. As explained supra at § I.A., the SAC fails

to even allege that the warranty at issue was ever applicable to the MFC machines belonging to plaintiffs Maniscalco, Huryk and Martorana.[2]  Additionally, the SAC fails to allege that plaintiff Fisher was in any way affected by the allegedly offending warranty. In any event, even if the warranty did induce Fisher to buy higher priced inkjet cartridges from BIC during the warranty period, the SAC does not allege that the warranties applicable to the MFC machines of plaintiffs Fisher and Rafferty were still applicable, i.e., had not expired, when this lawsuit was initiated. It follows that a declaration of the illegality of the conditional warranty at issue, under either the MMWA or the CFA, would have no effect on the plaintiffs. Such a declaration would not address any injury or settle any controversy because, on the allegations of the SAC, Plaintiffs have no more interest in such a declaratory judgment than any member of the general public. Thus, Plaintiffs have not alleged "enough factual matter (taken as true) to suggest," Phillips, 515 F.3d at 234 (quotations and citation omitted), that they have standing to assert a claim for a declaratory judgment that the warranty language quoted in paragraph 26 of the SAC violates the MMWA or the CFA.  Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs argue that the Declaratory Judgment Act allows declaratory judgments when no actual injury has occurred. Specifically, they rely on Justice Rhenquist's concurring opinion in Steffel v. Thompson, 415 U.S. 452 (1974) for the proposition that a declaratory judgement may

---

[2]Though Plaintiffs' Opposition Brief states that BIC "extended the warranty for up to 30 months on the machine that Plaintiff Maniscalco purchased in late 2005," Plaintiffs' Opposition Brief, 11 n.7, such allegation is nowhere in the SAC. In any event, the SAC does not allege that Maniscalco's MFC machine was subject to the warranty language at issue, and further, even if it was, that Maniscalco was in any way affected by the warranty. Moreover, though the SAC alleges that BIC has "secretly extended the warranty on some MFC machines" as a result of the "Machine Error 41" defect, SAC, ¶8, the SAC does not allege that the warranty for any of Plaintiffs' models of MFC machines, or their specific MFC machines, has been so extended.

be appropriate without a plaintiff having suffered an actual injury. However, the plaintiff in

Steffel had standing to seek a declaratory judgment because of threatened future injury, i.e.,

future prosecution for the distribution of handbills. Steffel, 415 U.S. at 459. Justice Rhenquist's

concurrence makes clear that "the Court's decision . . . deals only with declaratory relief and with

threatened prosecutions." Id. at 479 (Rhenquist, J., concurring) (emphasis added). On the facts

alleged in the SAC, the illegality of the conditional warranty at issue poses no threat of future

harm to Plaintiffs.

      Further, Plaintiffs rely upon Meltzer v. Board of Public Instruction of Orange County,

Fla., 548 F.2d 559 (5th Cir.1977) for the proposition that, even if BIC voluntarily stopped using

its allegedly illegal warranty, a declaratory judgment is appropriate here to prevent injury which

might be caused if BIC resumed using the illegal warranty. Plaintiffs Opposition Brief, 11. "The

capable-of-repetition doctrine applies only in exceptional situations, and generally only where the

named plaintiff can make a reasonable showing that he will again be subject to the alleged

illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (citation omitted). But there is

no risk of future injury here because Plaintiffs are no longer subject to the allegedly illegal

warranty. Moreover, Meltzer, a case involving school prayer and bible distribution, is inapposite.

The court held that the plaintiffs could pursue a declaratory judgment, in part, because "the

school board only recently barely tabled a motion to permit renewed distribution of Bibles."

Meltzer, 548 F.2d at 572. Thus, the plaintiffs clearly were subject to a real possibility of future

harm. In contrast, Plaintiffs here are in no danger of future harm from the illegality of BIC's

conditional warranties.

      Finally, Plaintiffs assert in their opposition brief that some members of their proposed

class had purchased MFC machines that were <u>still</u> covered by the conditional warranty at the time the lawsuit was filed, and thus are sustaining a continuing injury from the warranty. Plaintiffs' Opposition Brief, 10-11. Plaintiffs seek to represent a class of "[a]ll consumers who purchased Brother MFC machines for use, and not resale, in the United States from six years prior to the filing of this lawsuit (i.e., from October 2000) to the present [, i.e., October 2006]." SAC, ¶51. However, the SAC's "class allegations" do not even <u>mention</u> the conditional warranty, let alone that putative class members purchased MFC machines that were subject to the conditional warranty cited to in the SAC and were in some way injured by, or will potentially suffer future injury from, such warranty. It is unclear to which MFC machines, purchased in which years, Plaintiffs allege the offending warranty language applies, and hence, it is necessarily equally unclear whether such warranty language applies to MFC machines purchased by the class in the year prior to the lawsuit (which would not have expired by the filing of this lawsuit). Thus, the named plaintiffs have not alleged "enough factual matter (taken as true) to suggest," <u>Phillips</u>, 515 F.3d at 234 (quotations and citation omitted), beyond mere speculation, that members of the proposed class were <u>still</u> subject to the offending warranty language at the time suit was filed. Because "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level,'" <u>Phillips</u>, 515 F.3d at 232 (citation omitted), and Plaintiffs' allegation that putative class members were suffering injury at this lawsuit's initiation is speculative, Plaintiffs cannot use the standing of putative class members to support their standing to seek declaratory relief.

In the event that Plaintiffs move to amend the SAC so as to bootstrap allegations relevant to the standing of putative class members into support for the named plaintiffs' standing, the

Court notes that a named plaintiff cannot achieve standing based on allegations relating to class members. "[A] predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." Kauffman v. Dreyfus, Inc. 434 F.2d 727, 734 (3d Cir. 1970); see also Allee v. Medrano, 416 U.S. 802, 828-29 (Burger, J., concurring in part and dissenting in part) ("In particular, a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share[,] [as] [s]tanding cannot be acquired through the back door of a class action"); Zimmerman v. Schaeffer, Docket No. 06-1893, 2008 WL 682491, *4 (M.D. Pa. Mar. 7, 2008) ("If none of the named plaintiffs can establish standing for himself, then none may seek relief on behalf of the class"); Kahn v. Option One Mortg. Corp., Docket No. 05-5268, 2006 WL 156942, *7 (E.D. Pa. Jan. 18, 2006) ("named Plaintiffs cannot meet standing requirements by relying solely upon the claims and potential standing of putative class members"). "Unless [plaintiffs] can thus demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'" Warth v. Seldin, 422 U.S. 490, 502 (1975) (citations omitted).

However, as discussed infra at § IV.B.1.a., plaintiff Rafferty does have standing to pursue a claim for monetary damages under the CFA for past injury. The Supreme Court has made clear that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). How this

analysis, i.e., standing for damages is not tantamount to standing for equitable relief, is affected

by the potential standing of putative class members to pursue equitable relief was not specifically

addressed by the parties' briefing, and may need to be addressed in a motion for leave to amend

the SAC.[3]

In sum, because the SAC's "[f]actual allegations must be enough to raise a right to relief

above the speculative level," Phillips, 515 F.3d at 233, and the factual allegations do not

establish Plaintiffs' standing to seek a declaratory judgment absent speculation, their claims are

dismissed.

## B. Plaintiffs' Claims Under The CFA

### 1. Standing

Plaintiffs "second claim," insofar as it relates to the conditional warranty, is for monetary

damages and injunctive relief under the CFA. Defendants argue that Plaintiffs lack standing to

pursue these claims.

### a. Monetary Damages

Article III standing requires that "the plaintiff must have suffered an injury in fact-an

invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical." Township of Piscataway v. Duke Energy, 488 F.3d

---

[3]The Court notes that there is at least one Third Circuit case, Haas v. Pittsburgh Nat. Bank, 526 F.2d 1083 (3d Cir. 1975), permitting a named plaintiff to bring claims on behalf of a class which the plaintiff did not have standing to bring herself. Haas, 526 F.2d at 1088 ("Even though Haas herself does not have standing to challenge the service charge rate imposed on commercial transactions by Mellon Bank, summary judgement is inappropriate if Haas may represent a class of plaintiffs who do have standing"). Of course, the notion of using the standing of putative class members to pursue declaratory or injunctive relief to confer standing on named plaintiffs to pursue such relief may be another matter.

203, 209 (3d Cir. 2007) (citing <u>Trump Hotels & Casino Resorts v. Mirage Resorts</u>, 140 F.3d 478, 484-85 (3d Cir.1998)).

As explained <u>supra</u> at § I.A., the SAC does not allege that plaintiffs Maniscalco, Huryk, Martorana or Fisher have suffered any injury as a result of the warranty at issue. The SAC does not allege that the referenced warranty ever applied to the MFC machines of plaintiffs Maniscalco, Huryk, or Martorana, and the SAC fails to allege that plaintiff Fisher was in any way affected by the warranty, i.e., that as a result of the warranty, he bought inkjet cartridges from BIC instead of the cheaper cartridges of competitors <u>during</u> the warranty period. Because the SAC fails to allege that these plaintiffs have been injured by the conditional warranty at issue, they lack standing to assert claims under the CFA, and their claims are dismissed.

The SAC does, however, plead facts sufficient to show that plaintiff Rafferty was injured by the conditional warranty: he used only BIC inkjet cartridges during the warranty period, which cost approximately four times more than alternative inkjet cartridges, because his MFC machine warranty stated that use of non-BIC inkjet cartridges would void his warranty. SAC, ¶49. Thus, Rafferty has standing to bring a claim under the CFA for damages.

**b. Injunctive Relief**

The Third Circuit has made clear that "in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer <u>future injury</u> from defendant's threatened illegal conduct." <u>Roe v. Operation Rescue</u>,  919 F.2d 857, 864 (3d Cir. 1990) (citing <u>Lyons</u>, 461 U.S. at 105) (emphasis added); <u>see also</u> <u>Zimmerman</u>, 2008 WL 682491 at *4 ("where injunctive relief is sought, a plaintiff must demonstrate that he is likely to suffer future injury") (citing <u>Roe</u>, 919 F.2d at 864). For the same reason that the SAC fails to plead facts sufficient for standing to

16

pursue declaratory relief, see supra at § IV.A., i.e., none of the named plaintiffs are adequately

alleged to be subject to the conditional warranty referred to in the SAC at the time the lawsuit

was filed, the SAC fails to plead facts to show that any of the named plaintiffs are at risk of

future injury from the illegality of the conditional warranty.

Plaintiff Rafferty's standing to pursue money damages under the CFA for past injury

(which the SAC does not allege is continuing or likely to occur in the future) does not mean that

Rafferty has standing to pursue injunctive relief that would have no effect on Rafferty or the

other named plaintiffs. Lyons, 461 U.S. at 102, 105 ("[p]ast exposure to illegal conduct does not

in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by

any continuing, present adverse effects," and holding that "Lyons standing to claim damages

against the individual officers and perhaps against the city" did not translate into standing to seek

injunctive relief); Zimmerman, 2008 WL 682491 at *5, *5 n. 2 (holding that even though "there

is no doubt that Plaintiffs have established standing to seek damages for their injuries," the

"Plaintiffs do not have standing to seek injunctive relief because they have not demonstrated that

they are likely to suffer future injury at the hands of Defendants").

Similar to Plaintiffs' argument that they have standing to seek declaratory relief, Plaintiffs

also contend that the SAC's allegations of injury with respect to plaintiff Rafferty are sufficient

to permit Rafferty to pursue injunctive relief on behalf of the proposed class who might have

standing to pursue such relief. For the reasons explained above, supra § IV.A., since the SAC

fails to adequately allege that members of the proposed class were subject to the conditional

warranty referenced in the SAC at the time the lawsuit was filed, this argument is unavailable to

Plaintiffs.

17

Should Plaintiffs seek to amend the SAC, it is worth noting that Plaintiffs' only authority for this argument is <u>Laufer v. U.S. Life Ins. Co.</u>, 385 N.J. Super 172 (App. Div. 2006), which found that the named plaintiff could adequately represent the interests of a class in obtaining injunctive and declaratory relief even though the named plaintiff did not seek such relief. <u>Laufer</u>, 385 N.J. Super. at 181. The court did not confront the issue of whether the named plaintiff had standing to seek injunctive or declaratory relief, and if not, how that affected the analysis of her standing to pursue declaratory or injunctive relief on behalf of the class. Additionally, <u>Laufer</u> relied on the New Jersey Supreme Court's directive that 'the class action rule should be construed liberally in a case involving allegations of consumer fraud," <u>In re Cadillac</u>, 93 N.J. 412, 435 (1983), which may not be compatible with the standing requirements that Article III imposes on federal courts.

**2. Rafferty's CFA Claim**

Since only plaintiff Rafferty has standing to purse a claim for damages based on the conditional warranty, the Court will only address his claim. In addition to attacking Plaintiffs' standing under the CFA, BIC also argues that Plaintiffs fail to state a claim under the CFA. BIC's argument, however, is just a restatement of BIC's standing argument. "To state a cause of action under the CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements-defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." <u>Parker v. Howmedica Osteonics Corp.</u>, Docket no. 07-2400, 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008) (citing <u>New Jersey Citizen Action v. Schering-Plough Corp.</u>, 367 N.J. Super. 8, 13 (App. Div. 2003)). BIC does not address the issue of whether the conditional warranty constitutes an "unlawful practice"

18

under the CFA. Instead, BIC argues that the SAC fails to plead facts sufficient to establish the second and third elements: that Raffery has suffered an "ascertainable loss" in connection with the conditional warranty and a "causal connection" between such a loss and BIC's conduct. Defendant's Brief, 12-13.

BIC's argument that Plaintiffs were unaffected by the conditional warranty ignores the SAC's allegations as to plaintiff Rafferty. Rafferty claims to have bought BIC inkjet cartridges rather than the less expensive inkjet cartridges of competitors because his warranty stated that it would be void if he used non-BIC inkject cartridges during the warranty period. SAC, ¶49. To meet the "ascertainable loss" requirement, a private CFA plaintiff must "demonstrate a real and measurable loss of property or moneys." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 255. "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," but "it need not yet have been experienced as an out-of-pocket loss to the plaintiff." Id. at 248. BIC has not acknowledged Rafferty's injury as pleaded in the SAC, let alone provided a reason why it may not satisfy the requirement of an ascertainable loss. Further, according to the allegations of the SAC, such loss was caused by the conditional warranty. Thus, BIC's argument that the SAC fails to allege the elements of "ascertainable loss" and a "causal connection" to BIC's conduct fails and this claim by Rafferty remains.

**V. The "Machine Error 41" Defect**

BIC argues that the SAC fails to state a claim under the CFA with respect to the "Machine Error 41" defect. "To state a cause of action under the CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements-defendants' allegedly unlawful behavior and the plaintiff's

ascertainable loss." <u>Parker</u>, 2008 WL 141628 at *2 (citing <u>New Jersey Citizen Action</u>, 367 N.J.

Super. at 13). BIC contends that the SAC fails to allege all three of these elements with respect to

the "Machine Error 41" defect. Because the Court agrees that the SAC fails to sufficiently allege

that BIC had <u>knowledge</u> of the "Machine Error 41" defect <u>before</u> the sale of MFC machines to

any of the Plaintiffs that are adequately plead to have experienced such error, Plaintiffs' CFA

claims relating to the "Machine Error 41" defect fail to state the first element of a CFA violation.

Thus, they are dismissed without prejudice, and the Court need not reach BIC's alternative

arguments.

"The NJCFA creates three categories of unlawful practices: affirmative acts, knowing

omissions, and violations of state regulations." <u>Vukovich v. Haifa</u>, Docket No. 03-737, 2007 WL

655597, *9 (D.N.J. Feb. 27, 2007) (citing <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 462

(1994). The knowing omission category reads as follows:

> The act, use or employment by any person of any unconscionable commercial
> practice . . . or <u>the knowing, concealment, suppression, or omission of any</u>
> <u>material fact with intent that others rely upon such concealment, suppression or</u>
> <u>omission</u>, in connection with the sale or advertisement of any merchandise or real
> estate . . . is declared to be an unlawful practice.

 N.J.S.A. § 56:8-2 (emphasis added). With respect to the "Machine Error 41" defect, Plaintiffs

allege a knowing omission: "Brother violated N.J.S.A. § 56:8-2 by engaging in . . . fraudulent . . .

conduct, including . . . b. [m]anufacturing and selling machines that [BIC] know[s] are likely to

fail [and] e. [f]ailing to notify prospective purchasers and owners of MFC machines that the print

heads may fail prematurely as a result of the Machine Error 41 defect." SAC, ¶ 65.

"[W]hen the alleged consumer fraud consists of an omission, a plaintiff must show that

the defendant acted with knowledge, thereby making intent an <u>essential element</u> of the fraud."

Vukovich, 2007 WL 655597 at *9 (citing Cox, 647 A.2d at 462; Chattin v. Cape May Greene,

Inc., 124 N.J. 520, 522 (1991) (Stein, J. concurring)) (emphasis added); see also Duffy v.

Samsung Electronics America, Inc., Docket No. 06-5259, 2007 WL 703197, *6 (D.N.J. Mar. 2,

2007) ("'an essential element of a consumer fraud consisting of an act of omission is that a

defendants's act be knowing'") (citing Chattin, 243 N.J. Super. 590, 598 (App. Div. 1990),

affirmed 124 N.J. 520 (1991)) (internal quotations omitted) (emphasis added). BIC argues that

the SAC fails to allege the "essential element" of knowledge because the SAC does not claim

that BIC knew of the "Machine Error 41" defect prior to the sales of the MFC machines to

Plaintiffs. Defendant's Brief, 19.

The SAC alleges that BIC "acknowledged the ["Machine Error 41"] problem in its 2005

Social & Environmental Report." SAC, ¶34. The Report, attached as Exhibit A to the McNamara

Certification, states that BIC "found out" about the problem sometime "in 2004." Since the SAC

contains no further allegation as to when BIC had knowledge of the "Machine Error 41" defect,

the SAC, at best, implies that BIC had knowledge sometime in 2004. However, the SAC does not

allege that a plaintiff whose MFC suffered the "Machine Error 41" defect purchased his or her

MFC machine after BIC had knowledge of the error. Thus, with respect to all named plaintiffs,

the SAC fails to allege an "an essential element" of an omission actionable under the CFA.

Duffy, 2007 WL 703197 at *6.

The SAC alleges that plaintiffs Huryk and Rafferty purchased their MFC machines prior

to 2004. SAC, ¶¶44, 48. It is alleged that plaintiff Fisher's mother also purchased an MFC

machine prior to 2004, which "passed" to Fisher. Id. at ¶41. Plaintiff Martorana allegedly

purchased an MFC machine in August 2004. However, although the SAC (accompanied by the

2005 Social and Environmental Report) implies that BIC had knowledge of the "Machine Error 41" defect <u>sometime</u> in 2004, the SAC fails to allege that BIC had knowledge of the "Machine Error 41" defect <u>before</u> Martorana purchased an MFC machine in August of 2004. In a motion to amend the SAC, these plaintiffs may be able to sufficiently allege BIC's knowledge of the "Machine Error 41" defect prior to their purchases. But this Court will not infer "an essential element," <u>Duffy</u>, 2007 WL 703197 at *6, of their claims from a vague and loosely written complaint. Thus, the CFA claims pertaining to the "Machine Error 41" defect of plaintiffs Huryk, Rafferty, Fischer and Martorana are dismissed.

The SAC does adequately allege that plaintiff Maniscalco purchased an MFC machine subsequent to BIC's knowledge of the "Machine Error 41" defect. SAC, ¶37 (alleging that Maniscalco purchased an MFC machine in "late 2005").  However, the SAC does not adequately allege that Maniscalco's MFC machine suffered from the "Machine Error 41" defect. The SAC states: "On or about May 23, 2007, Plaintiff Maniscalco went to use his Brother printer, and got a '<u>machine error'</u> message that told him to 'contact Brother.' Mr. Maniscalco did not bother; his problems with his Brother printer had let him to purchase another company's printer." <u>Id.</u> at ¶38 (emphasis added). In contrast to the allegations concerning the other plaintiffs which all clearly specify that they received an "Error 41" message, the SAC's allegations with respect to Maniscalco mention only a "machine error." Further, in contrast to the other plaintiffs,[4] the SAC does not allege that Maniscalco's MFC machine stopped operating, or if it did, that Brother

---

[4]The SAC alleges that Fisher's MFC machine "stopped functioning, SAC, ¶42; the "Error 41" problem "prevent[ed] [Martorana's MFC machine] from working," <u>Id.</u> at ¶46; Rafferty's MFC machine "ceased functioning," <u>Id.</u> at ¶48; Huryk's MFC machine required "repair," as a result of the "Error 41" problem, and he "had to buy another printer." <u>Id.</u> at ¶44.

would not have fixed the problem. Indeed, the SAC states that Maniscalco received a message to "contact Brother," and that he "did not bother" because he had purchased another printer. Id.

The SAC does make the same boilerplate allegations with respect to Maniscalco that it does for the other plaintiffs: "Because of the depletion of ink from cartridges he did not use for printing, the inaccurate and misleading messages displayed by his Brother MFC machine, and the "Error 41" defect, Plaintiff Maniscalco did not receive the full value of his MFC machine or the inkjet cartridges he had to purchase. Consequently, he has suffered an ascertainable loss and actual injury." Id. at ¶40.  But this language does not indicate that Maniscalco's MFC machine in fact suffered the "Error 41" defect or stopped working because of that defect, as opposed to Maniscalco "not receive[ing] the full value of his MFC machine" because of its potential to fail due to a "Machine Error 41" defect. In any event, the vague and ambiguous allegations of the SAC do not provide "enough factual matter (taken as true) to suggest," Phillips, 515 F.3d at 234, other than through a blanket assertion, that Maniscalco has suffered "ascertainable loss and actual injury" because of the "Machine Error 41" defect. Id. Since "an ascertainable loss" by the plaintiff is an element of a CFA claim, which requires plaintiff to allege "a cognizable and calculable . . . loss," Parker, 2008 WL 141628 at *3 (citing Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 249 (2005); Castro v. NYT Television, 370 N.J. Super. 282, 295-96 (App. Div. 2004)), the SAC fails to state a claim pertaining to the "Machine Error 41" with respect to Maniscalco. Thus, that claim is dismissed.

**V. Unjust Enrichment**

BIC argues that Plaintiffs' unjust enrichment claims, to the extent that they are predicated on the conditional warranty and the "Machine Error 41" claims, fail as a matter of law for the

same reasons that Plaintiffs' conditional warranty and "Machine Error 41" claims fail under the CFA. Because plaintiffs Maniscalco, Fisher, Huryk and Martorana lack standing to attack the conditional warranty on the allegations of the SAC, their unjust enrichment claims regarding the conditional warranty are dismissed. However, the SAC does adequately state a claim under the CFA with respect to plaintiff Rafferty's injury from the conditional warranty. Since the <u>only reason</u> BIC provides for dismissing Rafferty's unjust enrichment claim based on the conditional warranty is that such claim fails under the CFA, Defendant's Brief, 23-24, and that argument does not succeed, BIC's motion to dismiss Rafferty's unjust enrichment claim predicated on the conditional warranty is denied.

Plaintiffs' unjust enrichment claims predicated on the "Machine Error 41" defect are identical to their claims under the CFA: "Plaintiffs and the proposed Class have conferred a benefit on Brother, <u>which Brother knew to be inequitable under the circumstances</u>, but accepted and retained those benefits nonetheless." SAC, ¶69 (emphasis added). However, as explained <u>supra</u> at § V., the SAC fails to allege that BIC knew of the "Machine Error 41" defect at the time the MFC machines at issue were sold to plaintiffs Fisher, Huryk, Martorana and Rafferty. Further, the SAC does not adequately allege that plaintiff Maniscalco, who is alleged to have purchased an MFC machine after BIC knew of the "Machine Error 41" defect, actually experienced, and suffered injury as a result of, the "Machine Error 41" defect. Hence, Plaintiffs' unjust enrichment claims are not supported by the factual allegations in the SAC, and those claims are dismissed.

## VI. Plaintiff Fisher's Standing

For the reasons stated <u>supra</u> at §§ IV and V, the allegations of the SAC fail to establish

that Fisher has standing to challenge the conditional warranty and that Fisher has stated a claim regarding the "Machine Error 41" defect. Thus, the Court need not consider whether Fisher's claims regarding these issues fail for the additional reason that he lacks standing because of the way he acquired his MFC machine.

However, BIC argues that Fisher also lacks standing to pursue his CFA claim predicated on his MFC machine's ink-wasting design features. Specifically, BIC argues that Fisher has suffered no injury from these design features, and hence lacks standing, because he was not the purchaser of the BIC Machine, and hence spent no money as result of BIC's conduct. But the SAC alleges otherwise: Mr. Fisher "purchased only [BIC] ink" and "has estimated that he has spent over $100 on ink replacement." SAC, ¶41. This expense was caused in part by the design features that, when not disclosed by BIC, are alleged to violate the CFA. Hence, Fisher is alleged to have suffered an injury in fact sufficient for standing to pursue his CFA claims predicated on his MFC machine's ink-wasting design features.[5]

## VII. Conclusion

For the foregoing reasons, Plaintiffs' "first claim" for a declaratory judgment is dismissed without prejudice. Plaintiffs' "second claim," insofar as it is predicated on the conditional warranty and the "Machine Error 41" defect, is dismissed without prejudice, except that plaintiff Rafferty's claim for damages under the CFA based on the conditional warranty remains. Plaintiffs' "third claim," insofar as it is predicated on the conditional warranty and the 'Machine

---

[5]BIC does not argue that Fisher lacks standing to pursue his claim that BIC misrepresented that the use of non-BIC inkjet cartridges would damage his MFC machine. SAC, ¶4. But for the same reason that Fisher has standing to bring a CFA claim based on design features of his MFC machine, Fisher has standing to bring a claim based on BIC's misrepresentations regarding non-BIC inkjet cartridges.

Error 41" defect, is dismissed without prejudice, except that Rafferty's unjust enrichment claim based on the conditional warranty stands. Finally, BIC's motion to dismiss Fisher's claims based on the ink-wasting design features of his MFC is denied.

BIC is granted 30 days to move to amend the SAC, in a manner consistent with this Opinion.

Dated: June 26, 2008                                    /s/ Freda L. Wolfson
                                                       Honorable Freda L. Wolfson
                                                       United States District Judge

26