UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| MANISCALCO et al., | : | |
| | : | Civil Action No. 3:06-CV-04907(FLW) |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| BROTHER INTERNATIONAL | : | |
| CORPORATION (USA), | : | |
| | : | |
| Defendant. | : | |

**WOLFSON**, **United States District Judge:**

Plaintiffs Mark Maniscalco ("Maniscalco") and Walter Huryk ("Huryk") ("Plaintiffs"), individually, and on behalf of a putative class of consumers, bring various claims relating to Plaintiffs' purchases of Defendant Brother International Corporation's ("BIC" or "Defendant") Multi-Function Center line of all-in-one devices ("MFC machines"). Presently before the Court is BIC's second motion to dismiss Counts I, II, and III of the Third Amended Complaint ("TAC"), insofar as they are predicated on the alleged "Machine Error 41" ("ME41") defect. Specifically, Count I seeks declaratory judgment under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2; Count II seeks damages and equitable relief under the CFA; and Count III alleges unjust enrichment.

For the following reasons, BIC's motion to dismiss is granted in part, and denied in part; the motion to dismiss is denied with respect to Count II and granted with respect to Counts I and III. With respect to Plaintiff Huryk, Count III is dismissed without prejudice.

1

**I. Factual Background**

BIC's motion only relates to claims arising out of the ME41 print-head defect; thus, Plaintiffs' other allegations predicated on using BIC print cartridges only and the ink-wasting characteristics of BIC machines need not be considered here. TAC at ¶¶4-6. Since Defendant moves to dismiss Plaintiffs' claims, in part, for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the following account of the facts assumes all of Plaintiffs' allegations to be true.

BIC distributes MFC machines, which function as printers, fax machines, scanners, and copiers, TAC, ¶1. Plaintiffs contend, among other things, that their MFC machines contained a defect "referred to as the 'ME41 defect' because most model MFC machines display the error code, 'Machine Error 41' on their LCD screens when their print heads failed." Id. at ¶7. The TAC alleges that BIC knew of the defect since 2001: "[i]nternal documents reveal that BIC has known, since at least 2001, that the ME41 defect was causing premature print-head failure in MFC machines." Id. at ¶53. Further, Plaintiffs allege that BIC then acted by "intentionally concealing and failing to disclose that information [the ME41 defect] to prospective purchasers; and . . . unconscionably limiting warranty coverage for print-head failure caused by the ME41 defect [.]" TAC ¶112. In or near February 2005, BIC "implemented a limited extended warranty . . .which extends the warranty coverage on some MFC print heads that fail as a result of the ME41 defect from 90 days to 24 months from the date of purchase or 30 months from the date on the serial number [.]" Id. at ¶57. Both parties agree that Plaintiffs did get the benefit of the extended warranty. Around that time, BIC sent an email broadcast and posted an announcement on its website to inform consumers of the extended warranty. Id. at ¶57, 59. However, Plaintiffs claim

that while taking these actions, BIC purposely downplayed the true "nature, scope, and extent of [the] ME41 [defect]." Id. at ¶61. Plaintiffs suggest that BIC "has made no efforts to notify consumers of the existence of that defect - including any mention on its website" other than the 2005 Report. Id. at ¶35. Further, Plaintiffs allege that BIC has not "promptly" offered repairs to consumers, but rather "blames the consumer, claiming that it was their use of non-OEM ink that caused the problem." Id. at ¶36. Consequently, Plaintiffs allege that consumers "were forced to replace the defective print heads (or the entire MFC machine) at their own expense." Id. at ¶60.

Plaintiff Walter Huryk, a South Carolina resident, purchased his 3220c MFC machine on December 11, 2003, TAC ¶88, and experienced a "Machine Error 41" problem with his MFC machine around March 2007, Id. at ¶90. Plaintiff Maniscalco, a California resident, purchased his MFC machine from Office Depot on June 28, 2004 and experienced a "Machine Error 41" defect in May 2007. See Maniscalco Interrog. No. 1; Micheletti Cert. ¶12[1] Both Plaintiffs allege they were forced to replace their MFC machines. Id. at ¶¶87, 93.

Plaintiffs filed suit in October 2006, filed a Second Amended Complaint in October 2007, and filed a Third Amended Complaint in July 2008.

---

[1]Although the TAC alleges that Plaintiff Mark Maniscalco purchased an MFC machine in late 2004, TAC ¶83. Plaintiffs' counsel represents that this was a typographical error. In fact, subsequent investigation, detailed in Plaintiffs' brief and produced to BIC through Rule 16 Disclosures and interrogatory responses, demonstrated that Plaintiff Maniscalco purchased his Machine from Office Depot on June 28, 2004 and that his Machine failed in May 2007, despite the TAC alleging March 2007. See Maniscalco Interrog. No. 1; Micheletti Cert. ¶12. BIC suggests that the Court should nevertheless use the dates as alleged in the TAC on a motion to dismiss and has refused to consent to Plaintiffs' request to correct the TAC. However, the Court may use other information to clarify a typographical error in a complaint where the opposing party becomes aware of the correct information during discovery. See Holbrook v. Woodham, No. 05-305, 2009 U.S. Dist. LEXIS 76268, at *17 (W.D. Pa. 2009). In that regard, the Court adjudicates the claims on the merits rather than on the mere technicalities.

**II. Standard Of Review**

BIC suggests that Plaintiffs' claims in the TAC are too vague and conclusory in nature to justify Plaintiffs' claims or standing. Therefore, it is important to elaborate on the standard for reviewing the sufficiency of a complaint. "[T]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Petruska v. Gannon University, 462 F.3d 294, 299 n. 1. (3d Cir. 2006).

In Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), the Third Circuit elaborated the appropriate standard for evaluating a Rule 12(b)(6) or 12(b)(1) motion in light of the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). The Third Circuit made clear that an acceptable statement of the standard remains: "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (internal quotations and citation omitted). Though Twombly "emphasized throughout its opinion that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement," Id., the Third Circuit emphasized the importance of Twombly's attention to the concept of a "showing."

> Fed. R. Civ. P. 8(a)(2) requires a "showing" that the plaintiff is entitled to relief:
>
> The [Twombly] Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." [Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,]1965 n. 3 [(2007)]. Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. at 1966. The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n. 3.

Id. at 231-32. Because a "showing" rather than a bare assertion is required, Twombly instructs

4

"that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Id. at 232 (citation omitted) (emphasis added). Further, "[w]e caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Id. (citation omitted). However, the Third Circuit further cautioned that, in Twombly's discussion, the concept of a "showing" "requires only notice of a claim and its grounds," as distinguished from "a pleader's bare averment that he wants relief and is entitled to it." Id. at 234 (internal quotations and citation omitted).

> The Third Circuit summarized:
>
> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id.

Id. Although only notice of a claim and its grounds are required to survive a motion to dismiss, a complaint must have "enough factual matter (taken as true) to suggest" the elements of the claim.

### III. Plaintiffs' ME41 Claim Under The CFA

BIC argues that the TAC fails to state a claim under the CFA with respect to the "Machine Error 41" defect.[2] "To state a cause of action under the CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal

---

[2] BIC contends that New Jersey law should not apply to this case but BIC suggests that this issue is best left for resolution later. Plaintiffs agree that the resolution of this issue is premature. Accordingly, the Court will not address it here.

5

nexus between the first two elements-defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." Parker v. Howmedica Osteonics Corp., No. 07-02400, 2008 WL 141628, *2 (D.N.J. 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 13 (App. Div. 2003)). BIC contends that the TAC fails to adequately plead all three of these elements with respect to the "Machine Error 41" defect. Because the Court finds that Plaintiffs have sufficiently alleged the three CFA elements, BIC's motion to dismiss Plaintiffs' CFA claims is denied. The Court now turns to each of the elements.

**A. Unlawful Conduct**

BIC contends that Plaintiffs fail to sufficiently allege the first element of a CFA claim, an unlawful practice. "The NJCFA creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." Vukovich v. Haifa, No. 03-737, 2007 WL 655597, *9 (D.N.J. Feb. 27, 2007) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). With respect to the "Machine Error 41" defect, Plaintiffs allege a knowing omission. TAC ¶112. The knowing omission provision reads as follows:

> The act, use or employment by any person of any unconscionable commercial practice . . . or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . is declared to be an unlawful practice.

N.J.S.A. § 56:8-2 (emphasis added). "[W]hen the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud." Vukovich, 2007 WL 655597 at *9 (citing Cox, 138 N.J. at 18; Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522 (1991) (Stein, J. concurring)) (emphasis added); see also Duffy v. Samsung Electronics America, Inc., Docket No. 06-5259, 2007 WL

703197, *6 (D.N.J. Mar. 2, 2007) ("'an essential element of a consumer fraud consisting of an act of omission is that a defendants's act be knowing'") (citing Chattin, 243 N.J. Super. 590, 598 (App. Div. 1990), affirmed 124 N.J. 520 (1991)) (internal quotations omitted) (emphasis added).

Further, "[t]he pleading requirements of Rule 9(b) apply to . . . NJCFA claims as well as . . . common law fraud claims." Slim CD, Inc. v. Heartland Payment Sys., No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *32 (D.N.J. Aug. 22, 2007) (citing F.D.I.C. v. Bathgate, 27 F.3d 850, 856 (3d Cir. 1994)). In Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007), the court elucidated what must be alleged to satisfy the heightened pleading standard:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." [ Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)]. To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. See id. at 224.

Frederico, 507 F.3d at 200. While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of mind of a person may be alleged generally").

BIC first argues that Plaintiffs fail to sufficiently allege the requisite knowledge and intent for a "knowing omission" because the TAC relies on mere speculation and conclusory statements. The Court disagrees. Plaintiffs do sufficiently allege, generally, that BIC acted with knowledge and intent by:

> c. Marketing, advertising, and selling machines that they know are likely to fail due to the ME41 defect before their expected useful life of five years or 50,000 pages of printed material, while intentionally concealing and failing to disclose information to prospective purchasers; and
> d. Unconscionably limiting warranty coverage for a print-head failure caused by

> the ME41 defect, despite BIC's knowledge that the ME41 defect would cause print heads in MFC machines to fail after the warranty period expired, but before the projected useful life of the MFC machines . . . ".

TAC ¶112 (emphasis added). Further, Plaintiffs specifically allege that BIC knew of the ME41 defect before Plaintiffs purchased their ME41 machines: "[i]nternal documents reveal that BIC has known, since at least 2001, that the ME41 defect was causing premature print-head failure in MFC machines." Id. at ¶54. Plaintiffs both purchased their MFC machines after 2001, TAC ¶¶83, 88, and taking Plaintiffs allegations as true, Plaintiffs have sufficiently plead the requisite intent and knowledge.

Next, BIC argues that the existence of a warranty, coupled with the product lasting beyond the warranty period, exempts it from the duty to disclose the fact that the MFC machine may fail beyond the warranty period.

Currently, New Jersey allows a CFA defense in circumstances where a warranty exists and the product performs beyond that warranty period. Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 111-12 (App. Div. 2006).

> [W]e agree in principle with the trial judge's determination that-absent those circumstances in which safety concerns might be implicated, as to which we offer no view-the failure of a manufacturer or seller to advise a purchaser that a part may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA.

Id. In Perkins, the purchaser of a Jeep alleged a violation of the CFA "because defendant did not reveal that the vehicle was manufactured with a tubular exhaust manifold allegedly susceptible to cracking and premature failing, and unlikely to last for 250,000 miles, which, plaintiff claims without support, is the industry standard for such a part." Id. at 103. In Perkins the claim was dismissed because:

8

> To interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of contract which defined the length and scope of the warranty period . . . [which] would also have a tendency to extend those warranty programs for the entire life of the vehicle . . .

Id. at 113. Simply put, Perkins stands for the proposition that merely alleging that the warranty is shorter than the industry standard useful life of the product does not state a claim under the CFA. Id.

However, BIC's reliance on the warranty defense is misplaced in the present case as is the alleged act of concealment on which Plaintiffs base their claims. Without addressing the general warranty defense espoused by Perkins, the present case requires a somewhat different analysis based upon the extant facts. In Perkins the allegedly substandard car part never actually failed, Id. at 103, while in the present case Plaintiffs allege that their products did suffer the defect. TAC ¶¶85, 90. Further, in Perkins plaintiff did not allege that the defendant knew that its specific product contained a defect that would cause it to fail before that product's expected useful life. 383 N.J. Super. at 103. Instead, the plaintiff in Perkins alleged only that the product contained an allegedly substandard part which may, but did not, cause the product to fail before the industry lifetime standard. Id. Although a manufacturer or seller need not warrant that its product will survive for the useful life of the product, the present case is different because it deals with BIC's expectations of its own product.[3]  Indeed, Plaintiffs allege that BIC knew of the ME41 defect by

---

[3]Plaintiffs' reliance on Payne v. Fujifilm U.S.A., Inc., No. 07-385, 2007 WL 4591281, *9 (D.N.J. 2007) is misplaced. In Payne, the court refused to dismiss a CFA claim based on a defect in a digital camera even though it lasted beyond the one-year warranty because plaintiff also alleged that the time limitations in the warranty were, themselves, unconscionable. Id. at *3, *9. As the Payne court noted: "Plaintiff's same allegations pertaining to contractual unconscionability underlie her NJCFA claim . . . these allegations provide an exception to the defense that the camera performed beyond the warranty period." Id. at *9 (emphasis added).

2001, knew that its product should last 5 years or 50,000 pages, limited the warranty coverage so that the MFC machines would last longer than the warranty period but that the machine head would not last as long as the product's expected useful life, and unconscionably marketed the product to uninformed consumers in order to maximize profits. These allegations taken as a whole are sufficient to constitute an unlawful act under the CFA.

The Court further notes that New Jersey courts have not provided clear precedent for the specific facts alleged in the present case[4] and so the Court must anticipate how New Jersey would rule on such alleged facts. See, e.g., Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 510, n. 11. (3d Cir. 2006). In New Jersey, broad CFA protection was envisioned by the legislature and has been recognized by the Supreme Court of New Jersey.[5] If the New Jersey Supreme Court were faced with a situation where a manufacturer or seller of a product knew that its product had

---

Plaintiffs here do not allege that the warranty period was unconscionable. Thus, Payne's rationale does not apply. Rather, Plaintiffs complain of BIC's unconscionable concealment which induced them to purchase BIC's Machines.

[4]BIC also cites Duffy v. Samsung Elecs. America, Inc., No. 06-5259, 2007 U.S. Dist. LEXIS 14792 (D.N.J. 2007) and Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008) in support of its case. Duffy is not on point because in that case plaintiff failed to allege that Samsung acted knowingly which would have been required to establish the unlawful act element. 2007 U.S. Dist. LEXIS 14792 at *6. Dewey is also unhelpful to BIC because the defendants in that case did not challenge the sufficiency of the alleged omission and the court dismissed the case, without prejudice, for failure to plead the causal nexus element with particularity. 558 F. Supp. at 527.

[5]See Gennari v. Weichert Realty Co., 148 N.J. 582, 604 (1997) ("[t]he history of the [Consumer Fraud] Act is one of constant expansion of consumer protection . . ."); Lemelledo v. Beneficial Mgmnt. Corp. of Am., 150 N.J. 255, 264 (1997) ("[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud . . ."); Cox, 138 N.J. at 16 ("we are mindful that the Act's provision authorizing consumers to bring their own private actions is integral to fulfilling the legislative purposes . . .").

a defect which would cause it to fail before its expected useful life, and intentionally concealed that information from a purchaser, with the purpose of maximizing profit, I predict that the New Jersey Supreme Court would not be willing to find, as a matter of law, that the CFA was categorically inapplicable. Therefore, this Court will not extend the holding in Perkins to cover the very different factual scenario in the present case. Accordingly, the Court finds that Plaintiffs have sufficiently alleged the first element of a CFA claim.[6]

**B. Ascertainable Loss**

BIC also contends that the named Plaintiffs fail to sufficiently allege the second element of a CFA claim, an ascertainable loss.[7] BIC first maintains that Plaintiffs' allegations lack sufficient specificity because they merely state in a conclusory manner that Plaintiffs "suffered an ascertainable loss and actual injury." TAC ¶¶87, 93. Although the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required.[8] Nevertheless, Plaintiffs

---

[6]This finding is consistent with McCalley v. Samsung Elecs. Am. Inc., No. 07-2141, 2008 WL 878402 (D.N.J. 2008) (denying a motion to dismiss where plaintiff alleged, inter alia, that he purchased a defective television which defendant knew or should have known had a defect, but the defect manifested itself outside the express warranty period); see Duffy, 2007 U.S. Dist. LEXIS 14792 at *6 (suggesting the salience of an allegation that "acts were done knowingly").

[7]BIC asserts that without pleading sufficient ascertainable loss, Plaintiffs would not be able to sue in their own right under the CFA and would, thus, also lack standing to assert the rights of the other members of the class. Kauffman v. The Dreyfus fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970) ("a predicate to [a plaintiff's] . . . right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class . . ."). The Court need not address the merits of the standing argument with regard to Plaintiffs because the Court finds that Plaintiffs have plead a sufficient ascertainable loss.

[8]Perkins, 383 N.J. Super. at 111 ("Here, plaintiff alleged in her complaint that she suffered an ascertainable loss. She did not allege the nature of that loss, nor was she so required at that stage. Defendant's motion to dismiss, unlike the summary judgment procedure, did not require, in order to avoid dismissal, that the plaintiff provide evidential material to rebut defendant's contention that she had not sustained ascertainable loss . . .") (citing, inter alia,

11

do allege specific loss by including the cost of replacing their MFC machines. Id. at ¶¶87, 91. Plaintiffs' repair or replacement cost was not covered by BIC's extended warranty because the parties do not dispute that Plaintiffs did not, in fact, get the benefit of the warranty. Further, neither Plaintiff could have exercised the warranty protection, since both Plaintiffs experienced the ME41 defect after the extended warranty period had expired: Plaintiff Huryk purchased his Machine on December 11, 2003, TAC ¶88, and experienced a "Machine Error 41" defect around March 2007, Id. at ¶90, and Plaintiff Maniscalco purchased his MFC machine on June 28, 2004 and experienced a "Machine Error 41" defect in May 2007.

BIC also relies on Perkins for the proposition that where a product outlasts its warranty period, there can be no ascertainable loss. BIC's reliance is misplaced. Perkins specifically distinguishes between the element of ascertainable loss and the warranty defense and even suggested that the trial judge's finding of no ascertainable loss was premature. 383 N.J. Super. at 111-12. Thus, Plaintiffs sufficiently allege the second CFA element.

**C. Causal Nexus**

Finally, BIC contends that Plaintiffs fail to sufficiently allege a causal connection between the purported unlawful conduct and the asserted ascertainable loss. BIC again relies on the existence of the warranty to immunize itself from any connection between the unlawful act and the harm and, as discussed supra at III.A., BIC's contention is without merit.

Further, BIC argues that Plaintiffs must prove a connection in order to succeed and that they fail to do so. However, to survive a motion to dismiss, Plaintiffs are only required to put

---

Thiedemann, 183 N.J. 234); Lamont v. OPTA Corp., 2006 WL 1669019 (App. Div. 2006)("There is nothing in *Thiedmann* that requires the pleading of an ascertainable loss element of a consumer Fraud Act cause of action with any special specificity . . .").

forth "enough factual matter (taken as true) to suggest" the elements of the claim. Phillips, 515 F.3d at 234. In that connection, it is sufficient if a plaintiff avers that "had the alleged [d]efect been disclosed, consumers would not have purchased [defendant's product]." McCalley v. Samsung Elecs. Am., Inc., No. 07-2141, 2008 U.S. Dist. LEXIS 28076, at *26 (D.N.J. 2008); see also Strzakowlski v. GMC, No. 04-4740, 2005 U.S. Dist. LEXIS 18111, 2005 U.S. Dist. LEXIS, at *25 (D.N.J. Aug. 16, 2005) (plaintiff adequately alleged a NJCFA claim where plaintiff claimed that she would not have purchased her vehicle if GM had disclosed the defect at issue). Plaintiffs, in the present case, allege that they were not aware of the ME41 defect prior to purchase and would not have purchased the product if not for BIC's failure to disclose the existence of the defect. TAC ¶¶87, 93. Thus, Plaintiffs have alleged facts which, if true, could form the basis of a causal nexus.

For the foregoing reasons, BIC's motion to dismiss Plaintiffs' ME41 CFA claim is denied.

## V. ME41 Declaratory Judgment

BIC maintains that Plaintiffs are not entitled to a declaratory judgment. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" requirement refers to the case or controversy requirement of Article III. Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp., 482 F.3d 1330, 1336 (3d Cir. 2007). In Teva Pharmaceuticals, the Third Circuit recently stated that standing in the declaratory judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

Id. (citing MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 771). The court continued: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S. Ct. 764, 771 (2007)); see also Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 193-94 (3d Cir. 2004). Specifically, the Third Circuit makes clear that "[i]n order to establish standing and thereby satisfy the 'case or controversy' requirement of Article III, a party requesting a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" Lattaker v. Rendell, Docket No. 07-4694, 2008 WL 723978, *2 (3d Cir. Mar. 18, 2008) (quoting Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2005)). The Court also notes that the granting of declaratory relief is discretionary and it is within the province of a Federal Court to deny declaratory relief where the Court finds denial appropriate. See, e.g., Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718-19 (1996).

The TAC does not clearly delineate the declaratory relief being sought here. In the section of the TAC on Count I, Plaintiffs specifically ask the Court to declare:

> (a) that BIC's conduct violates the CFA . . . and (b) that BIC is obligated to reimburse class members for the cost of repairing and/or replacing MFC machines whose print heads fail due to the ME41 defect after judgment is entered in this action.

14

TAC ¶112.[9] The declaration Plaintiffs seek in the Count I section of the TAC is duplicative of a favorable finding for Plaintiffs on their CFA claims. If there is a finding in favor of Plaintiffs on their CFA claims, then an <u>actual judgment</u>, rather than a mere declaration, would be entered stating that BIC's actions have violated the CFA and further that Plaintiffs, including class members, are entitled to relief, which could include the cost of repair or replacement. Unless Plaintiffs identify a basis in the CFA whereby the Court must grant declaratory relief as a prerequisite for a finding of liability, the Court need not issue a separate declaratory judgment on the merits of the action.

As such, Plaintiffs' claim seeking a declaratory judgment is dismissed and BIC's alternative arguments need not be considered.

**VI. ME41 Unjust Enrichment**

BIC maintains that Plaintiffs fail to sufficiently allege an unjust enrichment claim. An unjust enrichment claim may be sustained independently as an alternative theory of recovery. <u>In re K-Dur Antitrust Litigation</u>, 338 F.Supp.2d 517, 544 (D.N.J.2004) (finding defendant's motion to dismiss plaintiff's unjust enrichment claim as premature even where other remedies at law were available to plaintiff); <u>see</u> <u>also</u> <u>United States v. Kensington Hosp.</u>, 760 F.Supp. 1120, 1135 (E.D.Pa.1991) (allowing plaintiff to assert an unjust enrichment claim as an alternative theory of recovery when plaintiff had asserted a cognizable contract claim in the same complaint). Thus,

---

[9]In the introduction to the TAC, Plaintiffs summarize their claims and requests for relief by stating, <u>inter alia</u>, that they are asking the Court for: "declaratory relief in the form of an order declaring that class members whose print heads have yet to fail have the right to reimbursement of the cost of repair or replacement if and when their print heads fail as a result of the ME41 defect . . . ". TAC, ¶10. However, because this type of relief was not expressly plead in Count I, the Court will not consider this as a request for relief within Count I.

this Court must determine whether Plaintiff's allegations give rise to an unjust enrichment claim.

At the outset, the Court notes that an unjust enrichment claim need not be pled with the same specificity as a claim sounding in fraud. Rather, the more liberal notice pleading standard of Fed. R. Civ. P. 8(a) applies. An unjust enrichment claim requires plaintiff to allege "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." In re K-Dur, 338 F.Supp.2d at 544 (quoting RESTATEMENT OF RESTITUTION 1 (1937). Further, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994).

BIC first asserts that Plaintiffs' unjust enrichment claims fail as a matter of law for the same reasons that Plaintiffs' ME41 claims fail under the CFA. Plaintiffs' unjust enrichment claims predicated on the "Machine Error 41" defect are identical to their claims under the CFA: "BIC obtained secret profits by which it became unjustly enriched at the expense of Plaintiffs and proposed class members . . . [and it] would be unfair for BIC to retain the profits [.]" TAC ¶118. However, as explained supra at III, the TAC alleges a sufficient claim under the CFA. Therefore, BIC's argument based solely on Plaintiffs' purportedly failed CFA allegations, has no merit.

Nevertheless, BIC also argues that Plaintiffs' claims must fail because Plaintiffs did not sufficiently allege that BIC was enriched beyond its contractual rights nor did they allege that they purchased their MFC machines directly from BIC. Specifically, BIC asserts that Plaintiffs needs to allege a relationship between the parties to support unjust enrichment and that they fail

to allege this. In <u>Cooper v. Samsung Elecs. Am. Inc.</u>, No. 07-3853, 2008 WL 4513924 (D.N.J. 2008), the court determined that New Jersey law requires a direct relationship between the parties:

> although Cooper alleges that Samsung was unjustly enriched through the purchase of the television, <u>there was no relationship conferring any direct benefit</u> on Samsung through Cooper's purchase, as the purchase was through a retailer, Ultimate Electronics . . . Cooper, therefore, did not confer a benefit on Samsung within the meaning of New Jersey's doctrine of unjust enrichment.

Id. at *10 (emphasis added)(citations omitted); See also <u>Premier Pork L.L.C. v. Westin Inc.</u>, No. 07-1661, 2008 WL 724352, at *14 (D.N.J. 2008) ("quasicontract claims involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit . . ."); <u>Union Trust Co. of Md. v. Wakefern Food Corp.</u>, No. 86-728, 1989 WL 120756, at *21 (D.N.J. 1989) ("unjust enrichment requires a relationship or course of dealings between parties which, if left undisturbed by the intervention of the law, permits one party to obtain 'unjust enrichment or unconscionable advantage' over the other") (citation omitted); <u>Callano v. Oakwood Park Homes Corp.</u>, 91 N.J.Super. 105, 109 (App. Div. 1966) (citing importance of either a direct relationship or a mistake in quasi-contract). In the present case, Plaintiff Maniscalco concedes that he purchased his MFC machine from Office Depot and not directly from BIC. <u>See</u> Maniscalco Interrog. No. 1. Therefore, his benefit is not directly conferred upon BIC and his unjust enrichment claim is dismissed. Plaintiff Huryk <u>does not</u> allege that he purchased his MFC machine from BIC. TAC ¶ 88. Because Plaintiff Huryk fails to allege that he conferred a benefit directly upon BIC, Plaintiff Huryk's pleading does not sufficiently allege the elements of the claim. <u>See</u> generally <u>Twombly</u>, 127 S.Ct. 1955. Therefore, Plaintiff Huryk's unjust enrichment claim is dismissed without prejudice.

**VI. Conclusion**

  For the following reasons, BIC's motion to dismiss is granted in part, and denied in part; the Motion to dismiss is denied with respect to Count II and granted with respect to Counts I and III. With respect to Plaintiff Huryk, Count III is dismissed without prejudice.


Dated: June 19, 2009　　　　　　　　　　　　　　　　　/s/ Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　　　Honorable Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge