**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
MARK MANISCALCO, et al.,                :
                                        :   Civil Action No. 3:06-CV-04907(FLW)
            Plaintiffs,                 :
      v.                                :
                                        :
BROTHER INTERNATIONAL                   :
CORPORATION (USA),                      :
                                        :
            Defendant.                  :
_____:
                                        :
JAMES MCFADDEN, et al.,                 :
                                        :   Civil Action No. 3:07-CV-01905(FLW)
            Plaintiffs,                 :
                                        :   **OPINION**
      v.                                :
                                        :
BROTHER INTERNATIONAL                   :
CORPORATION (USA),                      :
                                        :
            Defendant.                  :
_____:

**WOLFSON, United States District Judge**:

        Presently before the Court is Defendant Brother International Corporation's ("BIC"),

appeal from two Orders, dated June 29, 2009 (the "June 29 Order") and October 23, 2009 (the

"October 23 Order"), by the Magistrate Judge ordering the production of certain design and

engineering documents of BIC's parent corporation, Brother Industries Ltd. ("BIL").  Defendant

argues that the Court should vacate the Magistrate Judge's Orders because the Magistrate Judge's

findings regarding BIC's control over BIL's design records are clearly erroneous and contrary to

1

law.  Plaintiffs, Mark Maniscalco and James McFadden ("Plaintiffs"), contend that the

Magistrate Judge's findings are entitled to great deference and should not be reversed because

Defendants have failed to demonstrate that the Magistrate Judge abused her discretion in

determining that Defendants had control over BIL's design records.   The Court has considered

the parties' moving, opposition, and reply papers, as well as the papers submitted by *Amicus*

*Curiae*, the Organization for International Investment ("OFII").  For the reasons that follow, the

Court will reverse the decision of the Magistrate Judge and vacate the June 29 and October 23

Orders.

## I.  Procedural History and Background

The Court will only recount facts relevant for the purpose of this motion.  Defendant BIC,

a Delaware corporation headquartered in Bridgewater, New Jersey, is a subsidiary of Brother

Industries LTD ("BIL") and the authorized United States distributer and provider of customer

support for Brother© brand inkjet Multi-Function Center line of all-in-one devices, which

function as printers, fax machines, scanners and copiers (collectively, the "MFC machines").  AC

¶¶ 1, 15; 6, 9-13.[1]  BIC also markets, advertises and distributes the replacement Original

Equipment Manufacture ("OEM") ink cartridges used by the MFC machines.  AC ¶1; 13.  The

MFC machines are manufactured by BIL, BIC's parent company, in Japan.

Plaintiffs filed putative class actions asserting claims relating to the MFC machines.  One

category of claims asserted relates to BIC's purported concealment of a printhead defect "referred

to as the 'ME41 defect' because most model MFC machines display the error code, 'Machine

---

[1]      "AC" refers to the Third Amended Complaint in the <u>Maniscalco</u> case and the First
Amended Complaint in the <u>McFadden</u> case, dated July 28, 2008 and November 30, 2007,
respectively.

Error 41' on their LCD screens when their print heads failed." Id. at ¶ 7.[2]  The other allegations relate to the purported inordinate propensity of the MFC machines to consume and purge ink. Specifically, Plaintiffs allege that the MFC machines are designed to falsely display the message "INK Empty" and to cease printing, copying, and faxing until the cartridge is replaced despite the fact that a substantial quantity of ink remains in the cartridge. Id. at ¶ 5; 3, 17-20.  Additionally, Plaintiffs allege that the MFC machines are designed to accelerate the depletion of ink by (i) implementing a "self-cleaning" feature that will deplete the cartridges even if the machine is not used and (ii) setting the MFC machine's default settings to use color ink even if the user seeks to print exclusively in black ink.  Id. at ¶ 6.

Defendant denies Plaintiffs' claims, and asserted as one of its defenses that:

> MFC products utilize a "duty cycle" which results in wetting the printheads when the products are not in use and which purges the clotted ink, i.e., ink that has been exposed to air and is somewhat dried, features which use relatively small quantities of ink in order to avoid damage to the products' printheads and which maintain superior print quality subsequent to a period during which the products have not been used.

Id. at ¶¶ 5, 25-26.[3]  Defendant further asserted that

> [T]o avoid permanent damage to the products' printheads and other product components, its MFC products are designed so that they will no longer print once one or more of the inkjet cartridges is empty.

Id. at ¶ 27.  Additionally, Defendant stated that

---

[2]      In the matter of Maniscaclo v. Brother Int'l Corp., Civil Action No. 06-4907, this Court granted BIC's motion to dismiss the ME-41 related claims based on unjust enrichment and declaratory relief, but denied the motion in connection with the claim brought under New Jersey's Consumer Fraud Act.  627 F.Supp.2d 494 (D.N.J. 2009).

[3]      Citations to Defendant's Answer refer to the initial Answer filed in the Maniscalco matter.

3

> MFC products employ two different LCD read-outs concerning ink
> levels, the first of which informs the user that the ink level is "near
> empty" and the second of which informs the user that the ink level is
> "empty."  Brother further states that, when the user sees the "near
> empty" LCD read out, it is incumbent upon h(im)(er) to be prepared to
> replace the appropriate inkjet cartridge; once the LCD read-out changes
> from "near empty" to "empty", the products have insufficient ink to
> continue to print, such that, except for maintaining a small quantity
> sufficient to prevent air inflow into the ink delivery system and printing
> mechanism – which would degrade future print quality and could cause
> damage to the entire ink supply system – further printing and "duty
> cycles" are disabled until the empty cartridge(s) (is)(are) replaced.

Id. at ¶ 30.  Plaintiffs assert that BIC reiterated the foregoing defenses in its portion of the parties'

Joint Discovery Plan, yet when plaintiffs attempted to verify these statements in discovery (i.e.,

request documents related to these defenses and Plaintiffs' allegations), "BIC declined to produce

facts that BIC deemed to be 'technical information relating to design changes in the relevant

printers' because such requests seek 'information from an entity that is not a party to this action

[BIL]."  Plaintiffs' Opp. Br. at 4 (quoting Joint Letter Brief dated October 10, 2008 ("Joint Letter

Brief"), Ex. 2 at 6-7 (document requests); Joint Letter Brief, Ex. 3 at 12, 15-24 (document

requests); Joint Letter Brief, Ex. 7 at 5-11, 13 (interrogatories)).   Plaintiffs contend that after

spending months trying to resolve the matter informally, they "moved for an order compelling the

production of the so-called 'design-related' documents BIC claims are in BIL's possession, or, in

the alternative, for an order precluding BIC from using that information in this litigation."

Plaintiffs' Opp. Br. at 5.[4]  BIC objected to Plaintiffs' discovery requests for design related

documents on the grounds that any documents relating to the design of the MFC machines and

_____

[4]      The Court notes that despite Plaintiffs' reference to a "motion", the dockets in the
Maniscalco and McFadden matters do not reflect the filing of a formal motion.  Rather the parties
addressed the discovery dispute by application to the Magistrate Judge in the form of a Joint
Letter Brief, which was sent directly to the Magistrate Judge and not filed on either docket.

inkjet cartridges were not within the possession, custody or control of BIC.  Significantly, however, BIC advised "that to the extent 'design' or 'technical' information was in BIC's possession, custody or control, BIC produced such documents."  Joint Letter Brief at 42 (citing Def. Ex. 16).  BIC claims to have produced "thousands of pages of highly technical information for the dozens of models at issue in the purported class."  Id. (Citing Def. Exhs. 15, 19, 20, 21).  Accordingly, what is at issue are design related documents in the physical possession of BIL.[5]

On December 8, 2008, following oral argument on the discovery dispute, the Magistrate Judge concluded that the Plaintiffs had failed to satisfy their burden of proving that BIC had control over documents pertaining to the design of the MFC machines and inkjet cartridges which were in the physical possession of its Japanese corporate parent, BIL.  Tr. 33:2-21.  The Magistrate Judge ordered BIC to submit to a 30(b)(6) deposition on issues related to BIC's control over the design documents.  Id.  Thereafter, Plaintiffs took 30(b)(6) depositions of Donald W. Cummins, BIC's Senior Vice President of Marketing and a member of BIC's board of directors, and Charles Stadler, BIC's Vice President of National Service.

On June 29, 2009, after reviewing the parties' original and supplemental submissions related to the production of design related documents, the Magistrate Judge ordered the production of the requested documents from BIL, finding that BIC had "control" over the

---

[5]     The Court notes that while the parties and the Magistrate Judge identify the disputed discovery as technical design-related information, Plaintiff noted in its application to the Magistrate Judge that "while 'technical' and 'design' documents are the focus of this brief, Plaintiffs seek an order applicable to all responsive documents in BIL's possession."  Joint Letter Brief at 22, n. 16.  Accordingly, in light of the Magistrate Judge's ruling that "BIC is therefore directed to obtain the requested documents from BIL and to produce them . . .", it would appear that BIC must request BIL to produce responsive documents in connection with each of Plaintiffs' 71 document request and 15 interrogatories, regardless of whether the documents are design related.

documents as that term is used Fed.R.Civ.P. 34(a).  BIC subsequently moved for reconsideration of the June 29 Order, which motion was denied on October 23, 2009.

## II.  Standard of Review

"A United States Magistrate Judge may 'hear and determine any [non-dispositive] pretrial matter pending before the court.'"  Cardona v. Gen. Motors Corp., 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636 (b)(1)(A)); see also Fed. R. Civ. P. 72(a).  A magistrate judge's ruling concerning discovery is non-dispositive.  Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc., 629 F.Supp.2d 416, 433 (D.N.J. 2009).   The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, "is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (quotations omitted).  "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000) (citations omitted).  In contrast, "the phrase 'contrary to law' indicates plenary review as to matters of law." Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); accord In re Human Tissue Products Liability Litigation, No. 06-135 (WJM), 2009 WL 1097671, * 1 (D.N.J. Apr. 23, 2009) (citation omitted).  See also, Mruz v. Caring, Inc., 166 F.Supp.2d 61, 66 (D.N.J. 2001) ("[T]his Court will conduct a *de novo* review of a Magistrate Judge's legal conclusions."); accord Cooper

6

Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998).  "A ruling is contrary to

law if the magistrate judge has misinterpreted or misapplied applicable law."  Kounelis v. Sherrer,

529 F.Supp.2d 503, 518 (D.N.J. 2008) (citing Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d

162, 164 (D.N.J. 1998)).

      Moreover, where the appeal seeks review of a matter within the exclusive authority of the

magistrate judge, such as a discovery dispute, an even more deferential standard, the abuse of

discretion standard, may be applied.  Port Auth. v. Affiliated FM Ins. Co., No. 91-2907 (JWB),

2001 U.S. Dist. LEXIS 7579, at * 5 (D.N.J. Mar. 29, 2001); see also  Nestle Foods Corp. v. Aetna

Cas. and Sur. Co., No. 89-1701 (CSF), 1992 WL 233797, at * 1 (D.N.J. Sep. 8, 1992);  Cooper

Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. at 127.  "An abuse of discretion occurs: 'when the

judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion

is abused only where no reasonable man would take the view adopted.'"  Richards v. Johnson &

Johnson, Inc., No. 05-3663 (KSH), 2008 WL 544663, at * 2 (D.N.J. Feb. 26, 2008) (quoting

Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir.

1976)(internal quotation omitted)).  See also, United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st

Cir. 2003), cert. denied, 541 U.S. 1074 (2004) ("An abuse of discretion occurs when a "material

factor deserving significant weight is ignored, when an improper factor is relied upon, or when all

proper and no improper factors are assessed, but the court makes a serious mistake in weighing

them.")(internal citations omitted)).  "This test displays considerable deference to the

determination of magistrates in such matters."  Port Auth. v. Affiliated FM Ins. Co., 2001 U.S.

Dist. LEXIS 7579 at * 5 (quoting 7 Moore's Federal Practice ¶ 72.03(7.-3) at 72-42 (1989)).

However, an error of law or finding of fact that is clearly erroneous may indeed constitute such

abuse.  See e.g. Marshak v. Treadwell, No. 08-1771, 2009 WL 1886153, * 4 (3d Cir. Jul. 2, 2009)

(noting on review of district court's contempt decision for abuse of discretion that reversal is

appropriate "only where the decision 'is based on an error of law or a finding of fact that is clearly

erroneous.'"); see also Republic of the Philippines v. Pimentel, 128 S.Ct. 2180, 2189, 171

L.Ed.2d 131 (2008) (quoting Koon v. United States, 518 U.S. 81, 99-100, 116 S.Ct. 2035, 135

L.Ed.2d 392 (1996) for proposition that "a court 'by definition abuses its discretion when it makes

an error of law'").

### III. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 34(a) governs the production of documents in civil

matters.  Pursuant to Rule 34(a), a party may serve a request for the production of documents that

are "in the responding party's possession, custody, or control[.]"  Here, where the responding

party does not have possession or custody of the requested documents, the issue necessarily

becomes whether the responding party nevertheless has "control" over the documents as

contemplated by Rule 34(a).  "Federal Courts construe 'control' very broadly under Rule 34."

Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J. 1991).  Indeed,

"[c]ontrol is defined as the legal right, authority or ability to obtain documents upon demand."  Id.

"The determination of whether an entity has 'control' over documents under Fed.R.Civ.P.

34(a), is a 'very fact specific' inquiry."  Davis v. Gamesa Technology Corp., No. 08-4536, 2009

WL 3473391, at * 2 (E.D.Pa. Oct. 20, 2009) (quoting Pitney Bowes, Inc. v. Kern Int'l, Inc., 239

F.R.D. 62, 66 (D.Conn.2006)).  Camden Iron is the seminal case within this Circuit setting forth

the factors a court considers to determine whether documents that are in the physical possession of

8

a parent corporation are within the control of the subsidiary for the purposes of compelling

production under Rule 34.  Citing <u>Gerling Intern. Ins. Co. v. C.I.R.</u>, 839 F.2d 131, 141 (3d Cir.

1988) in which the Third Circuit expressly recognized that "[w]here the relationship is thus such

that the agent-subsidiary can secure documents of the principal-parent to meet its own business

needs and documents helpful for use in the litigation, the courts will not permit the agent-

subsidiary to deny control for purposes of discovery by an opposing party", the <u>Camden Iron</u> court

delineated the factors considered when assessing whether the litigating subsidiary company has

control over documents in the physical possession of the parent company.  "[W]here the litigating

corporation is the subsidiary and the parent possesses the records, courts have found control to

exist on the following alternate grounds:

> (1) the alter ego doctrine which warranted "piercing the corporate veil";
>
> (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit;
>
> (3) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;
>
> (4) There is access to documents when the need arises in the ordinary course of business; and
>
> (5) subsidiary was marketer and servicer of parent's product (aircraft) in the United States.

<u>Camden Iron</u>, 138 F.R.D. at 441-42.  It is well established that the burden is on the party seeking

production to establish that the producing party has control over the requested documents.  <u>Id.</u> at

441; <u>see also</u>,  <u>Davis</u>, 2009 WL 3473391, at * 2.

### B.  The Magistrate Judge's Decision

In determining that BIC had control over BIL's design and engineering documents, the Magistrate Judge focused on the third ground identified by the Camden Iron court – "the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation." June 29 Order at 4.   The Magistrate Judge concluded that despite BIC's close relationship with BIL, BIC did not have customary access to the requested documents in the ordinary course of business.  Nevertheless, the Magistrate Judge found that there was no evidence that had BIC requested the documents from BIL that access would have been denied.  The Magistrate Judge based that determination on the finding that BIL had only twice declined to provide BIC with requested information.  Because the Magistrate Judge found the two instances in which BIL had denied BIC access to requested information factually distinct from the present case, where BIC would only be seeking pre-existing documents relevant to the litigation and because BIL had agreed to cover BIC's defense costs in this litigation and possibly cover the cost of any settlement reached or adverse judgment entered, the Magistrate Judge found it "inconceivable that BIC would not be able to obtain the requested documents, which are clearly relevant to this litigation." June 29 Letter Order at 6.

The Magistrate Judge denied BIC's subsequent motion for reconsideration of its decision, finding no grounds to support reconsideration.  Specifically, the Magistrate Judge rejected BIC's contention that new evidence, in the form of a declaration of Henry J. Sacco, BIC's Vice-President and Chief Legal Officer, that BIL's in-house legal department advised that it would not provide the requested documents (the "Sacco Declaration") supported reconsideration.  The Magistrate Judge refused to consider the Sacco Declaration, finding that while BIC had no obligation to attempt to obtain the requested documents before arguing that it lacked control over

10

the documents, BIL's subsequent denial did not constitute "new evidence" warranting reconsideration.  The Magistrate Judge noted that "[w]hile that information may have been unknown to BIC at the time Plaintiffs' initial application was heard, it was not unknowable." October 23 Memorandum Opinion at 13.  Accordingly, the Magistrate Judge declined to consider the Sacco Declaration and denied reconsideration on that basis.   Additionally, the Magistrate Judge rejected BIC's contention that the Court had overlooked relevant caselaw addressing the issue of control in rendering its initial determination.  The Magistrate Judge also rejected BIC's contention that the court impermissibly shifted Plaintiffs' burden of proving control to BIC, noting that the court expressly, in its June 29 Letter Order, acknowledged that Plaintiffs bore the burden.  October 23 Memorandum Opinion at 14.  The Magistrate Judge further noted that

> based upon the Rule 30(b)(6) deposition testimony cited by Plaintiffs, the Court determined that BIL had historically refused to produce documents to BIC (even documents to which BIC did not have customary access) under limited circumstances that the Court found to be distinguishable from those presented here.  This evidence coupled with the evidence demonstrating that BIL is paying for BIC's legal defense in this matter and may cover the cost of any settlement reached or judgment rendered in this case led the Court to conclude that it would be "inconceivable that BIC would not be able to obtain the requested documents[.]"

Id. at 15.  Finally, the Magistrate Judge concluded that, in addition to the Rule 30(b)(6) witness testimony which established that BIL had refused to provide requested documents to BIC in limited factually dissimilar circumstances, the testimony elicited from BIC's witness supported the conclusion that BIL did not have a policy that prevented the sharing of information with BIC. The Magistrate Judge found similarly probative the evidence that Plaintiffs in fact requested

information of BIL in August 2006 in connection with the instant litigation.[6]

**C.  Analysis**

As an initial matter, the Court addresses the standard of review applicable to the instant

appeal.  BIC urges this Court to apply a *de novo* standard of review.   BIC argues that because this

appeal is limited to the Magistrate Judge's legal conclusion that BIC has control over BIL's

design and engineering documents, plenary review is appropriate.  BIC points out that it is not

challenging the factual findings of the Magistrate Judge on appeal.  Rather, BIC frames the appeal

as presenting only a question of law as to whether BIC could have legal control over BIL's

documents given the Magistrate Judge's finding that BIC has no access to such documents in the

ordinary course of business.  According to BIC, the only issue before the Court on appeal is

whether the Magistrate Judge made the correct conclusion of law based upon the evidence.  Def.

Reply Br. at 6.  In support of the application for plenary review, BIC cites U.S. Int'l Trade

Comm'n v. ASAT, Inc., 411 F.3d 245, 253-55 (D.C.Cir. 2005) (hereinafter, the "ASAT, Inc.

decision") wherein the D.C. Court of Appeals reviewed *de novo* whether an ALJ's findings of fact

were sufficient to give rise to a reasonable inference that the producing party had control over

subpoenaed documents in the possession of one of its parent companies.

---

[6]     The Court notes that in its briefing to this Court, while BIC disputes the relevance
of BIC's August 2006 request for information and additionally notes that it was an inadvertently
produced privileged document subject to the claw back provisions of a Stipulated Confidentiality
Agreement and Protective Order, BIC does not appear to claim any error in the Court's reference
to the correspondence.  In response to Plaintiffs' initial application which is the subject of the
instant appeal, BIC cross-moved seeking an order compelling the return of the privileged
documents.  Joint Letter Brief at 59.  The disposition of BIC's cross-motion is unclear from the
record presented to this  Court on appeal, however, in light of the Magistrate Judge's reliance on
same, the Court is left to presume such application was denied and that BIC does not appeal that
determination.

Citing Local Civil Rule 72.1(c)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiffs contend that "a Magistrate Judge's ruling on a non-dispositive motion will be set aside only if the order is 'clearly erroneous or contrary to law.'" Opp. Br. at 35 (*quoting* Ortho-McNeil Pharm. Inc. v. Lupin Pharm. Inc., No. 06-4999 (GEB), 2008 WL 4117848, at * 2-3 (D.N.J., Aug. 29, 2008)).  Plaintiffs concede that "the Third Circuit has construed 'contrary to law' to mean 'plenary review as to matters of law,'" but argues that "the 'clearly erroneous' standard must be applied to the findings of fact (and mixed questions of law and fact) that informed the magistrate's legal rulings on the two, fact-driven, non-dispositive motions at issue here."  Opp. Br. at 36.  In support of their position, Plaintiffs cite Davis, 2009 WL 3473391 at * 2 for the proposition that "[t]he determination of whether an entity has 'control' over documents under Fed.R.Civ.P. 34(a) is a 'very fact specific inquiry.'" Id.  Additionally, Plaintiffs contend that the Magistrate Judge's determination is entitled to great deference and reversible only for abuse of discretion, presumably because it involves a discovery dispute.

In assessing the appropriate standard to apply to this Court's review of the Magistrate Judge's June 29 and October 23 Orders, this Court must focus on the precise issue or issues on appeal.  "Where there is a mixed question of law and fact, 'the reviewing court should separate the issue into its respective parts, applying the clearly erroneous test to the factual component, the plenary standard to the legal.'"  North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)  (*quoting* Ram Constr. Co. v. American States Ins. Co., 749 F.2d 1049, 1053 (3d Cir. 1984).  While the instant appeal involves a discovery dispute, which ordinarily falls within the purview of the Magistrate Judge requiring review under the abuse of discretion standard, the June 29 and October 23 Orders rest upon the Magistrate Judge's determination that

13

BIC has control over BIL's design related documents for the purposes of Rule 34.  In that regard, the Magistrate Judge's decision hinges on the application of Rule 34 and necessarily involves a mixed question of law and fact requiring review under the "clearly erroneous or contrary to law" standard.  Accordingly, this Court shall review the Magistrate Judge's determination to ascertain whether it is clearly erroneous or contrary to law.

On appeal, BIC argues that the record before the Magistrate Judge compelled a finding that BIC did not have legal control over the subject design documents.  BIC contends that the only "evidence" of control identified by the Magistrate Judge was (i) that BIL had historically refused to produce documents to BIC under limited circumstances that the Magistrate Judge found distinguishable and (ii) that BIL was paying BIC's legal defense and potentially the cost of any settlement reached or adverse judgment.  BIC argues that the payment of defense costs cannot form the basis for finding control.  Citing the ASAT, Inc. decision, BIC contends that the D.C. Circuit rejected the presumption that a subsidiary has the ability to obtain documents in the parent company's possession simply because the parent has agreed to pay defense costs "[e]mphasizing that there must be a nexus between the documents sought and the subsidiary's business responsibilities with the parent company."  BIC's Br. at 20.  Additionally, BIC cites Pitney Bowes, 239 F.R.D. at 69, wherein a Connecticut district court noted that the fact that a parent company may be the true stakeholder in the litigation alone is insufficient to establish control because "this factor, 'along with others must be weighed in determining control for purposes of Rule 34.'"  239 F.R.D. at 69 (quoting Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 131 (D.Del. 1986)). Given its contention that the payment of defense costs is not a basis for finding control, BIC argues that the Magistrate Judge's finding of control is solely based on the absence of evidence

14

that BIC could not obtain BIL's design and engineering documents.  Because the Magistrate Judge

relied on the absence of evidence to find control, BIC argues that the Magistrate Judge

impermissibly shifted the burden, presuming that BIC had control over the documents.

Additionally, BIC reasons that once the Magistrate Judge concluded that BIC did not have

customary access to the requested documents in its ordinary course of business, the Magistrate

Judge necessarily determined "that there is no nexus between BIC's business activities – sales,

marketing and service of Brother-brand products – and the design and engineering documents in

the possession of BIL."  Rep. Br. at 10.  Accordingly, BIC contends, the conclusion that BIC had

control over BIL's documents was "clearly erroneous" because "the case law is replete with

examples where courts require such a nexus in order to find control in these situations, regardless

of the 'factor' considered."  Rep. Br. at 9-10.

       Plaintiffs argue that even under the plenary review standard, BIC has failed to

demonstrate on appeal any misinterpretation or misapplication of law by the Magistrate Judge that

would warrant this Court's reversal.  Plaintiffs concede that they bore the burden of establishing

control and argue that the Magistrate Judge correctly determined that they met that burden.

Further, Plaintiffs take issue with BIC's assertion that a nexus is required between requested

documents and a subsidiary's business responsibilities with its parent company, pointing out that

BIC itself recognized in its arguments before the Magistrate Judge that the "nexus requirement"

applies only to the fourth and fifth Camden Iron factors and, accordingly, is inapplicable here

where the determination of control is based upon the third factor.  Opp. Br. at 38 (citing Joint

Letter Brief at 48).  Additionally, Plaintiffs contend that there is absolutely no support in the case

law for BIC's contention that the Magistrate Judge erroneously considered BIL's underwriting of

BIC's defense and potential exposure to judgment or settlement costs, noting that it is well established that a non-party's interest and involvement in the litigation is a valid consideration when determining the existence of control.  Opp. Br. at 39 (*citing* <u>Afros</u>, 113 F.R.D. at 131 ("If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession.");  <u>Heartland Surgical Speciality Hosp., LLC v. Midwest Div., Inc.</u>, No. 05-2164, 2007 WL 950282, at * 17 (D.Kan., Mar. 26, 2007)(among the factors to determine control are "any benefit or involvement by the non-party corporation in the transaction, and . . . involvement of the non-party corporation in the litigation")).  Finally, Plaintiffs take issue with BIC's analysis of the facts of this case in comparison to numerous cases in which courts applying the <u>Camden Iron</u> factors have found a subsidiary to have no control over documents in the possession of a foreign parent.  Opp. Br. at 38-39.

At the outset, the Court notes that BIC's contention that a finding of control under <u>Rule</u> 34 requires the finding of a nexus between the requested documents and the subsidiary's relationship with its parent company is directly contrary to the position it took in its initial briefing to the Magistrate Judge.  Indeed, BIC pointed out in its initial brief that  "[w]ith regard to the fourth and fifth [<u>Camden Iron</u>] factors, 'there must be a nexus between the [requested documents] and [the subsidiary's] relationship with its parent company, taking into account, among other things, [the subsidiary's] business responsibilities.'" October 10, 2008 Joint Letter Brief at 48-49. Nevertheless, the Court need not address whether BIC is correct in its assertion that the nexus requirement is not limited to the fourth and fifth <u>Camden Iron</u> factors, as the Magistrate Court held, because the Court finds that the testimony elicited from the Rule 30(b)(6) witnesses simply

does not support the Magistrate Judge's determination under the third <u>Camden Iron</u> factor that

BIC could obtain documents from BIL to meet its own business needs and documents helpful for

use in litigation.

In the June 29 Letter Order on the initial decision on Plaintiffs' application, the

Magistrate Judge grounded her determination on the following:

> BIL has only twice declined to provide BIC with requested information. First, BIL refused to provide BIC with information concerning BIL's intellectual property when BIC requested it so that BIC could provide it to a third-party in order to allow the third-party to create an application that would be compatible with Brother machines (See Ex.1 at 169:2-170:14). Second, BIL denied BIC's requests for "schematics for certain electronic boards[,]" which BIC sought so that it could repair the boards, both because BIL believed that the electronic boards could not be repaired and because the schematics did not exist in the form BIC requested.  (Ex. 2 at 20:17-18).  Both of these instances are factually distinct from that presented here, where BIC is involved in litigation and would only be seeking pre-existing documents relevant to the litigation.  As a result, it appears that had BIC requested the design and engineering documents from BIL to meet its own needs, BIL would have agreed to produce same.

> This conclusion is strengthened by the fact that BIL has not only agreed to pay "100% of the defense costs and expenses related to attorneys and other professionals" incurred by BIC in defending the instant matter (Ex. 1M), but has also agreed to consult with BIC about settling any liability expenses "[i]n the event of an adverse decision, or in the event of a settlement, resulting in costs to BIC[.]" (*See Id.*)  Under these circumstances, where BIL is covering BIC's legal defense expenses and where BIL may cover the cost of any settlement reached by or judgment entered against BIC, the Court finds it inconceivable that BIC would not be able to obtain the requested documents, which are clearly relevant to this litigation.  Furthermore, as in *Camden Iron*, BIC's inability to obtain the requested documents "is at best theoretical" as it does not appear that BIC has "[]ever made even an informal request for the . . . documents at issue[.]" 138 F.R.D. at 443.

> For these reasons, the Court finds that BIC has "the legal right, authority or ability" to obtain the documents requested by Plaintiffs and, consequently, the Court finds that BIC has "control" over the same, as that term is used in Rule 34.

On reconsideration, the Magistrate Judge reiterated the reasons underlying her finding of control,

holding as follows:

> The Court determined that Plaintiffs established BIC's control by putting
> forth credible evidence that (1) historically, BIL had only denied BIC
> access to requested information, even where that information was not
> customarily (i.e. regularly) accessible by BIC in its day-to-day business
> operations, in limited situations, which were distinguishable from those
> presented here; (2) BIL has agreed to pay all of BIC's litigation costs and
> expenses in this matter; and (3) BIL agreed to consult with BIC about
> paying any liability expenses incurred as a result of either an adverse
> judgment in this matter or the settlement of this litigation.
> . . . .
>
> The Court acknowledges, as BIC points out, that the testimony from the
> two Rule 30(b)(6) witnesses indicates that there have been more than two
> instances where BIC has been unable to obtain requested information from
> BIL.  This fact, however, does not alter the Court's conclusion that the
> evidence presented by Plaintiffs establishes that BIC controls the requested
> documents.  Indeed, despite the fact that there have been more than two
> instances of refusals by BIL, the Court finds that Plaintiffs' questioning of
> the Rule 30(b)(6) witnesses established that BIL's refusal to provide
> requested documents to BIC has occurred in limited circumstances.
> Further, while BIC makes much out of Plaintiffs' decision not to focus
> direct questioning on whether BIC ever requested documents similar to
> those requested here from BIL, the court finds equally probative Plaintiffs'
> questioning concerning instances where BIC requested information from
> BIL and BIL refused to provide it.  Also pertinent was testimony elicited
> on the issue of whether BIL has a policy against sharing information with
> BIC.  This testimony supported the conclusion that no such policy existed.
> Similarly relevant was information provided by Plaintiffs that shortly after
> Plaintiffs sent BIC a demand letter in August 2006, BIC contacted BIL and
> requested information concerning issues involved in this litigation, which
> BIL provided.

The Magistrate Judge further rejected BIC's contention on reconsideration that she had

improperly shifted the burden to BIC, noting:

> The Court . . . concluded that BIC had control over the requested design

18

and engineering documents based on evidence provided by Plaintiffs. Only after reaching this conclusion did the Court note that "BIC's inability to obtain the requested documents 'is at best theoretical' as it does not appear that BIC has '[]ever made even an informal request for the . . . documents at issue[.]" (*Id.* (quoting *Camden Iron*, 138 F.R.D. at 443)). The fact that the Court included this observation in its Order did not impermissibly shift the burden of proof from Plaintiffs to BIC.

The Court was aware that Plaintiffs had the burden of proof and squarely placed this burden on Plaintiffs' shoulders. BIC, of course, had every right not to seek to obtain the design and engineering documents from BIL; documents it believed it did not control. BIC also, however, had the right and opportunity to counter Plaintiffs' demonstration of control with any arguments and/or evidence it chose to put forward. BIC believed that Plaintiffs could not satisfy their burden of proof based on the available evidence. The Court disagreed, finding that Plaintiffs met their burden of establishing that BIC had control over the requested documents.

In reaching this decision, the Court referenced the fact that BIC had not attempted to obtain the documents from BIL. In so doing, the Court was not suggesting that BIC had an obligation to seek documents from BIL, nor was the Court impermissibly shifting the burden of proof from Plaintiffs to BIC. Instead, the Court was simply noting that because BIC decided against seeking to obtain the documents from BIL, BIC's inability to obtain same was theoretical and, as such, the Court had to weigh the evidence put forth by Plaintiffs without consideration of BIC's actual inability to obtain the documents. On the record before it, the Court determined that Plaintiffs had established control. Thus, the Court referenced BIC's theoretical inability to obtain the requested design and engineering documents simply to note that had BIC chosen to attempt to obtain same from BIL and put forth evidence that it was unable to do so, then such evidence would have been considered by the Court in its control analysis and may have, though not necessarily would have, been sufficient to overcome Plaintiffs' demonstration of control.

The Court finds that while the Magistrate Judge employed the proper test in assessing the issue of control, the Magistrate Judge indeed misapplied the law by placing the burden on BIC to disprove control over the requested documents.   In light of the Magistrate Judge's initial determination that Plaintiffs failed to satisfy their burden of establishing control when the parties

19

first appeared before her on December 8, 2008, the testimony of the two Rule 30(b)(6) witnesses was critical to the finding of control. Yet, the only evidence cited by the Magistrate Judge in connection with those depositions is (i) their testimony that they were unaware of any BIL policy, whether written or unwritten, that restricted BIC's access to information in BIL's possession and (ii) that the two instances cited by the witnesses in connection with BIL's refusal to provide requested information were factually distinguishable.

The Court turns to the testimony elicited regarding BIC's ability to obtain requested information. When asked whether he could recall a time that BIL has refused to provide requested information, Donald W. Cummins, BIC's Senior Vice President of Marketing, testified that the one instance that came to mind was one in which BIC sought to provide intellectual property to third party resellers seeking to modify BIC's products. Supplemental Joint Letter Br., Ex. 1 at T169:2 - T170:14. Similarly, Charles Stadler, BIC's Vice President of National Service, described only one instance in which BIL refused to provide BIC with schematics for certain electronic circuit boards because the board technology had changed and BIL was of the opinion that the boards were not repairable. Supplemental Joint Letter Br., Ex. 2 at T20:12 - T25:10. However, Plaintiffs do not identify, nor does this Court's review of the deposition transcripts reveal, any testimony whatsoever indicating that BIL has ever actually provided BIC with engineering or design documents in the nature of those requested here. Nevertheless, because the circumstances surrounding BIL's refusal to provide requested documents were limited and factually distinguishable and because both witnesses testified that they were unaware of whether BIL maintained an official policy regarding BIC's access to information in BIL's possession, the Magistrate Judge presumed that BIC must be able to obtain BIL's engineering and design

documents upon request.   In doing so, the Court finds that the Magistrate Judge impermissibly placed the burden on BIC to disprove control.

The Court appreciates the Magistrate Judge's obvious concern that BIC, by virtue of its relationship with its parent, had access to certain technical information pertaining to the allegations and defenses in this litigation.  Indeed, as the Magistrate Judge noted, the record reveals that shortly after Plaintiffs sent BIC a demand letter in August 2006, BIC contacted BIL and requested information concerning issues related to the litigation.  However, evidence of BIC's request, even when combined with the witness testimony, does not equate to control by BIC over BIL's engineering and design documents.  Indeed, examination of the grounds upon which the Magistrate Judge based the determination of control reveal not one instance in which documents of the nature sought were *ever* supplied by BIL.  The record is devoid of evidence that *any* design or engineering related documents were ever previously produced by BIL such that a determination could be made that BIC has access to the requested documents to meet its business needs, including its business needs in connection with the instant litigation.  The testimonial evidence suggested only instances in which design related documents were requested, *but not supplied*. Moreover, as BIC points out, "there is no evidence in the record to suggest that BIL ever even responded" to BIC's August 2006 request for technical information related to the functionality of certain machines.  Rep. Br. at 10-11.  At most, the record reveals that BIC, under certain circumstances, has requested design related documents.  There is no evidence that any design related documents were ever supplied.  The absence of such evidence, where Plaintiffs bore the burden, is fatal to their assertion that BIC had control over requested design and engineering related documents.

21

In addition to compelling the production of the requested documents, Plaintiffs alternatively sought in their initial application to the Magistrate Judge to preclude BIC from using the requested design and engineering related documents in support of its defense in this litigation. Joint Letter Brief dated Oct. 10, 2008, at 1, 21.  Given this Court's determination that BIC does not have control over BIL's design and engineering related documents for the purposes of Rule 34, the Court finds the alternative relief sought by Plaintiffs in their initial application appropriate. Accordingly, BIC shall be precluded from using any design or engineering related documents in BIL's possession, or from obtaining any information from BIL related to design or engineering documents in BIL's possession, in defense of the litigation.[7]  The Court's ruling in this regard should address any fairness concerns raised by Plaintiffs concerning the potential unavailability of other avenues of obtaining the requested documents directly from BIL.  This, of course, does not excuse Plaintiffs from attempting to obtain such documents from BIL.  To the extent that Plaintiffs believe that design and engineering documents relevant to their affirmative case are in the possession of BIL, Plaintiffs must indeed attempt to obtain such documents from BIL through other avenues, regardless of whether Plaintiffs believe those avenues may yield results.

Finally, in light of this Court's conclusion that BIC cannot be compelled to produce the requested documents based upon the evidence in the record, this Court need not address the policy concerns raised by OFII in its *Amicus* Brief in connection with the conduct of international investment.

---

[7]       The Court's ruling does not, of course, apply to any of the discovery that has already been produced by BIC in response to Plaintiffs' discovery requests.  As BIC indicates, it has already produced "thousands of pages of highly technical information for dozens of models at issue in the purported class."  Joint Letter Brief at 42 (citing Def. Exhs. 15, 19, 20, 21).

**IV.  Conclusion**

      The Court finds that the Magistrate Judge's factual findings and the record are insufficient to support a determination as a matter of law that BIC has control of the requested design and engineering documents in BIL's possession.  Accordingly, the Court reverses the Order of the Magistrate Judge.

_____/s/ Freda L. Wolfson_____
Honorable Freda L. Wolfson
United States District Judge

Dated: March 4, 2010